■ JOSEPH M. ANGELO, Respondent, v METRO-NORTH COMMUTER RAILROAD et al., Appellants, et al., Defendant. [598 NYS2d 189] —Order of the Supreme Court, New York County (Karla Moskowitz, J.), entered August 20, 1992, which denied defendants' motion for summary judgment dismissing the complaint, unanimously reversed on the law, the motion granted and the complaint dismissed, without costs. The clerk is directed to enter judgment in favor of defendants-appellants, severing and dismissing plaintiff's complaint as against them.

The plaintiff, while employed as a Metro-North policeman, was accused by a vendor of stealing groceries from the vendor's store in Grand Central Station. As a consequence, the plaintiff was charged with violating various Metro-North Police Department rules and regulations and, after a disciplinary hearing held pursuant to article 16 of his contract of employment, was found guilty of the charged misconduct and dismissed from the force. Upon the denial by Metro-North of plaintiff's appeal of his dismissal, plaintiff took a further appeal before the National Railroad Adjustment Board and prevailed. The Board Referee held that Metro-North had not proved the plaintiff's commission of the charged misconduct with the requisite certainty and directed that he be reinstated and awarded back pay. The plaintiff then commenced the present action in which he seeks damages for malicious prosecution. His complaint alleges that the disciplinary proceeding ultimately resolved in his favor was brought without legitimate basis and that Metro-North "knowingly and maliciously suppressed evidence with the intent of procuring a dismissal of the plaintiff from his employment".

Defendants contend that plaintiff has no common law remedy available to him; that the administrative review process prescribed in section 3 of the Railway Labor Act (44 Stat 577, as amended; 45 USC § 153), successfully invoked by the plaintiff, was his sole avenue of relief. In this connection, defendants maintain that the substance of the matter the plaintiff would now litigate was governed by and, indeed, addressed to the extent permitted by law, pursuant to the grievance-to-arbitration provisions of the collective bargaining agreement by which the plaintiff as a Metro-North employee was bound. As defendants point out, section 3 of the Railway Labor Act (45 USC § 153) provides that all "minor disputes" between covered employees and the carriers for which they work are to be resolved exclusively by means of the procedures set forth in the Act, and, accordingly, that when a dispute is "minor" within the meaning of the statute, State common law remedies which might otherwise be invoked are preempted. An examination of the relevant authorities indicates that the term "minor dispute" was intended to be broadly inclusive. Indeed, the Act itself indicates plainly that its mandatory arbitration provisions were meant "to provide for the prompt and orderly settlement of *all* disputes growing out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions" (45 USC § 151a [5] [emphasis added]). And, adverting to this language,

courts have observed that "[t]he entire 'minor dispute' resolution system of the RLA was intended to provide prompt resolution, without resort to the courts, of disputes arising out of the employment relation" *(Melanson v United Air Lines,* 931 F2d 558, 564, *cert denied* — US —, 112 S Ct 189, citing *Edelman v Western Airlines,* 892 F2d 839, 843).

The present controversy indisputably arises out of the employment relation between the plaintiff and defendant Metro-North. As noted, the plaintiff alleges that the disciplinary process set forth in article 16 of the applicable collective bargaining agreement, by means of which the charges of professional misconduct lodged against him were adjudicated, was invoked without basis and that in the course of attempting to obtain his dismissal Metro-North suppressed evidence. It is clear that the question of whether there was sufficient evidence to bring and sustain misconduct charges against the plaintiff was one answerable only by reference to and interpretation of the disciplinary provisions of the collective bargaining agreement. As such it was a question appropriate for address, if at all, within the grievance-to-arbitration framework provided for in the agreement. Plainly, it is not a matter which may now be relitigated within the context of a common law claim for malicious prosecution. To permit the defendant's conduct of disciplinary proceedings against the plaintiff once again to become the subject of litigation would interfere in the most palpable way with the Act's aforestated objective of providing "for the prompt and orderly settlement of all disputes growing out of grievances or out of the interpretation or application of agreements covering * * * rules or working conditions" (45 USC § 151a [5]).

Nor do plaintiff's bare allegations to the effect that the disciplinary process was tainted by irregularities constitute a sufficient predicate to justify addressing his grievance outside of the mandatory arbitration process set forth in the collective bargaining agreement. Similar allegations of prosecutorial misfeasance in the conduct of disciplinary proceedings brought pursuant to a Railway Labor Act collective bargaining agreement were made in *Magnuson v Burlington N.* (576 F2d 1367, *cert denied* 439 US 930). In rejecting these allegations as the basis for the assertion of a common law claim, the court noted after reviewing the relevant portions of the collective bargaining agreement: "All of the alleged misfeasance of the railroad employees is thus 'arguably' governed by the collective bargaining agreement or has a 'not obviously insubstantial' relationship to the labor contract. Under these circumstances, the

controversy is a minor dispute within the exclusive province of the grievance mechanisms established by the R.L.A. *(See, e.g., United Transp. Union v. Penn Central Transp. Co.* (3d Cir. 1974) 505 F.2d 542, 544-45 ('not obviously insubstantial'); *Local 1477, United Transp. Union v. Baker* (6th Cir. 1973) 482 F.2d 228, 230 (both tests used); *Railway Express Agency v. Brotherhood of Railway, Airline & Steamship Clerks* (5th Cir. 1971) 459 F.2d 226, 231 ('arguably'); *Airline Stewards Ass'n v. Caribbean Atlantic Airlines, Inc.* (1st Cir. 1969) 412 F.2d 289, 291 ('not obviously insubstantial'); *Southern R. Co. v. Brotherhood of Locomotive Firemen & Enginemen* (1967) 127 U.S.App.D.C. 371, 374, 384 F.2d 323, 327 (same).)" *(Magnuson v Burlington N., supra,* at 1369-1370.) The present allegations of misfeasance, being no less related to a Railway Labor Act collective bargaining agreement, cannot be treated differently; they too must be viewed as alleging a "minor dispute" within the meaning of the Act and, as a consequence, cannot be asserted as the basis for a common law claim.

Finally, it may be noted that plaintiff's bare allegations of carrier misconduct are insufficient to bring his common law claim within the very narrow exception to Federal preemption delineated in *Farmer v Carpenters* (430 US 290). To the extent that the petitioner in *Farmer* was deemed to have a permissible common law claim against his union notwithstanding the arguable jurisdiction of the National Labor Relations Board, it was in light of detailed allegations of misconduct by the union so outrageous that " 'no reasonable man in a civilized society should be expected to endure it' " *(supra,* at 302). The present complaint, alleging unspecified improprieties in the conduct of disciplinary proceedings ultimately concluded in the plaintiff's favor, does not come close to furnishing a comparably compelling predicate for the sought exception. Moreover, in *Farmer* the applicable Federal regulatory scheme, the National Labor Relations Act (hereinafter NLRA; 29 USC § 151 *et seq.),* had, at best, a tangential bearing upon the claimed misconduct, whereas here the alleged misfeasance falls directly within an area over which the relevant statute, the Railway Labor Act, expressly assumes exclusive control. As has been noted, "In contrast to the NLRA, the RLA creates detailed procedures to resolve discharge disputes involving railroad workers. The NLRA has no comparable statutory discharge remedy. The existence of the statutory remedy vastly increases the likelihood that state-law remedies interfere with the federal regulation applicable to railroad workers." *(Mayon v Southern Pac. Transp. Co.,* 805 F2d 1250, 1252.) That likelihood having been

fully realized in the present case, the plaintiff's common law claim must be dismissed. Concur—Murphy, P. J., Sullivan, Carro and Kupferman, JJ.