OPINION OF THE COURT
 

 Titone, J.
 

 On this appeal, we are called upon to determine whether the trial court lacked subject matter jurisdiction over plaintiff’s common-law defamation action because it constituted a "minor dispute” within the exclusive purview of the mandatory grievance-to-adjustment board procedures established by the Federal Railway Labor Act (RLA) (45 USC § 151
 
 et seq.).
 
 For the reasons that follow, we conclude that plaintiff’s State law claim is preempted, and her exclusive remedy lies with the arbitration procedures established under the RLA.
 

 Plaintiff Joan Harris was employed by Metro-North Commuter Railroad (Metro-North) as a crew dispatcher and was a member of the Brotherhood of Railway, Airline and Steamship Clerks (BRAC) collective bargaining unit. The terms of plaintiff’s employment were governed by a collective bargaining agreement (CBA) entered into between Metro-North and BRAC. On July 16, 1986, defendant Hirsh, plaintiff’s former supervisor, called plaintiff into his office to discuss her work performance. Plaintiff alleges that during that encounter, and in the presence of plaintiff’s two immediate supervisors who were invited to attend the meeting, defendant Hirsh asked plaintiff whether she had a problem, and then stated to her: "You take drugs. I’ve worked in the Towers, and I know a person who is on drugs and you look like one. I’ve been thinking about sending you for a drug test.” During the meeting, defendant Hirsh also indicated that he was suspicious that plaintiff used drugs because on a prior occasion he had observed her give an "incoherent” answer to a co-worker
 
 *738
 
 who had posed a question. Defendant’s remarks were eventually circulated among plaintiffs co-workers.
 

 By letter dated August 7, 1986, plaintiff requested that the BRAG district chair institute an investigation and grant her an "unjust treatment” hearing pursuant to rule 52 of the CBA
 
 [1]
 
 to determine whether defendant’s conduct during the July 16 meeting violated company policy and procedure.
 
 [2]
 
 Plaintiff thereafter commenced this slander action in State court, alleging that defendant’s false and defamatory words damaged her reputation and caused her to suffer mental anguish and physical injuries. Defendant Hirsh asserted as affirmative defenses that the court lacked subject matter jurisdiction over the defamation claim because it was preempted by the mandatory arbitration provisions set forth in the RLA, and that defendant’s comments were made in the context of a supervisor-employee interview and were thus subject to a qualified privilege.
 

 At the commencement of trial, defendant moved to dismiss the complaint on the jurisdictional ground. Supreme Court denied the motion. To support plaintiffs claim at trial that defendant knowingly uttered false statements about plaintiffs purported drug use, plaintiff introduced uncontradicted testimony that her two immediate supervisors had previously told defendant, in response to his inquiry, that plaintiff was not on drugs. Plaintiff also introduced three documents as exhibits: the Metro-North substance abuse policy, her August 7, 1986 letter requesting a rule 52 unjust treatment hearing, and a letter written by defendant on February 12, 1987 informing her that her position had been abolished. Thereafter, the jury returned a verdict in favor of plaintiff, finding specifically that defendant (1) committed the intentional tort of slander per se, (2) was entitled to a qualified privilege as her supervisor, (3) abused the qualified privilege he enjoyed, and (4) acted with malice when he defamed her. The jury awarded plaintiff $1.2 million in compensatory and punitive damages. Defendant
 
 *739
 
 moved to set aside the verdict, again arguing Federal preemption. The motion was denied.
 

 The Appellate Division reversed the order denying the motion to set aside the verdict and dismissed the complaint. The Court concluded that the trial court lacked subject matter jurisdiction by virtue of Federal preemption. In so holding, the Court determined that the allegations raised in plaintiffs State law complaint must be considered "a 'minor dispute’ within the meaning of the RLA” because the claim "is one growing out of a grievance and 'indisputably arises out of the employment relation between the plaintiff and * * * Metro-North’ ” (196 AD2d 425, 426, quoting
 
 Angelo v Metro-N. Commuter R. R.,
 
 193 AD2d 525). We now affirm.
 

 Congress enacted the RLA (45 USC §§ 151-163) to stabilize labor-management relations in the rail and air carrier industries and to ensure uniform application of Federal law in the interpretation of labor agreements (Atchison,
 
 Topeka & Santa Fe Ry. Co. v Buell,
 
 480 US 557, 562 [1987]). The act establishes a comprehensive scheme for the orderly and prompt resolution of disputes between covered carriers and their employees that could potentially interrupt service and affect the Nation’s commerce
 
 (Union Pac. R. R. Co. v Sheehan,
 
 439 US 89, 94 [1978]). To achieve the congressional goal of "keeping railroad labor disputes simple and out of the reach of the often lengthy court process”
 
 (Grate v Trans World Airlines,
 
 905 F2d 1307, 1309 [9th Cir],
 
 cert denied
 
 498 US 958 [1990]), the RLA gives the National Railroad Adjustment Board, or an adjustment board jointly established by the employer and the representative unions
 
 (see,
 
 45 USC § 153 [First] [i]; [Second]) primary and exclusive jurisdiction to resolve what have been termed "minor disputes” between covered carriers and their employees
 
 (Elgin, Joliet & E. Ry. Co. v Burley,
 
 325 US 711, 723 [1945]). "Minor disputes,” statutorily defined as all "disputes between an employee * * * and a carrier * * * growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions” (45 USC § 153 [First] [i]), are subject to binding and compulsory arbitration under the RLA (45 USC § 153).
 
 [3]
 

 All claims that may properly be characterized as "minor
 
 *740
 
 disputes” are subject exclusively to the arbitration procedures established by the RLA, even if the disputes could otherwise provide the basis for State tort remedies
 
 (Magnuson v Burlington N,
 
 576 F2d 1367 [9th Cir],
 
 cert denied
 
 439 US 930 [1978]). Thus, a plaintiff cannot circumvent the RLA’s mandatory dispute resolution provisions by recharacterizing or disguising a minor dispute as one grounded on State common law
 
 (Lorenz v CSX Transp.,
 
 980 F2d 263, 268 [4th Cir 1993];
 
 Magnuson,
 
 576 F2d 1367, 1369,
 
 supra).
 

 To prevent an aggrieved employee from avoiding the mandatory RLA arbitration provisions, the courts have defined preempted "minor disputes” expansively
 
 (Consolidated Rail Corp. v Railway Labor Executives,
 
 491 US 299, 307 [1989]). A dispute will clearly be deemed "minor” within the meaning of the RLA when "the terms of an existing agreement either establish or refute the presence of a right to take the disputed action”
 
 (id.,
 
 at 305). However, the fact that a claim is not expressly governed by precise terms of a collective bargaining agreement is not fatal for purposes of RLA preemption. Minor disputes will include not only claims concerning "the meaning or proper application of a particular [CBA] provision,” but also those "founded upon some incident of the employment relation,” although not expressly covered by a contract term
 
 (Burley,
 
 325 US 711, 723,
 
 supra).
 
 A commonly followed restatement of the governing inquiry is that the RLA grievance provisions will preempt State tort actions when the underlying claims are "based on a matrix of facts which are inextricably intertwined with the grievance machinery of the collective bargaining agreement and of the R.L.A.”
 
 (Magnuson,
 
 576 F2d 1367, 1369,
 
 supra.)
 

 The purpose of defining "minor disputes” broadly is clear: "[i]f the pleading of emotional injury permitted aggrieved employees to avoid the impact of the R.L.A., the congressional purpose of providing a comprehensive federal scheme for the settlement of employer-employee disputes in the railroad industry, without resort to the courts, would be thwarted”
 
 (Magnuson,
 
 576 F2d 1367, 1369,
 
 supra,
 
 cited in
 
 Melanson v United Air Lines,
 
 931 F2d 558, 561, n 1,
 
 cert denied
 
 502 US —, 112 S Ct 189 [1991]). In other words, an employee should not be permitted to disguise or restate a genuine contract claim in terms of tort or to extract parasitic tort claims from an employment-related grievance to obtain remedies outside of those contemplated by the RLA.
 

 
 *741
 
 It follows from those principles that a State defamation action — which typically will not be expressly governed by a specific labor contract term — will be preempted if the disputed statements were made in connection with conduct authorized by the governing collective bargaining agreement and concerned matters related to the employment relationship
 
 (see, Gay v Affourtit,
 
 1993 WL 438923, 2 [US Dist Ct, SD NY 1993] [libel action preempted where collective bargaining agreement between airline and aircraft crew members must be consulted to determine whether crew had qualified privilege to report misconduct of pilot, even if reports turn out to be false and defamatory]). In other words, where the dispute turns on whether a provision of the collective bargaining agreement created a qualified privilege to discuss certain employment-related matters, and that privilege would serve as the employer’s defense to the suit, the terms of the labor contract are necessarily implicated. In such circumstances, the congressional goal that labor contracts negotiated under Federal law receive uniform interpretation will only be furthered where the arbitration board acts as the final arbiter, and not the courts. The State law claim may survive, however, if "the alleged defamation becomes distanced from the work-place and is only 'peripherally’ concerned with federal labor law”
 
 (Lorenz v CSX Transp.,
 
 980 F2d 263, 267 [4th Cir 1992],
 
 supra; see also Rosemond v National R. R. Passenger Corp.,
 
 1986 WL 10711 [US Dist Ct, SD NY 1986]).
 

 Along with a number of courts that have addressed the issue, we conclude that the preemptive effect of the RLA is more pervasive than the preemptive effect of the Labor Management Relations Act, 29 USC § 185
 
 et seq.
 
 (LMRA or TaftHartley Act), or the National Labor Relations Act, 29 USC § 151
 
 et seq.
 
 (NLRA or Wagner Act)
 
 (see, Lorenz v CSX Transp.,
 
 980 F2d 263, 268,
 
 supra; Melanson v United Air Lines,
 
 931 F2d 558, 562,
 
 supra; Grote v Trans World Airlines,
 
 905 F2d 1307, 1309-1310 [9th Cir 1990];
 
 DeTomaso v Pan Am. World Airways,
 
 43 Cal 3d 517, 528, 733 P2d 614 [1987]), two Federal regulatory schemes with a purpose distinct from that of the RLA
 
 (see generally, Andrews v Louisville & Nashville R. R. Co.,
 
 406 US 320, 323 [1972]). Accordingly, we reject plaintiff’s claim that the test for preemption under section 301 of the LMRA (29 USC § 185) established in
 
 Lingle v Norge Div. of Magic Chef
 
 (486 US 399 [1988]) — whether "resolution of a state-law claim
 
 depends upon
 
 the meaning of a collective bargaining agreement”
 
 (supra,
 
 at 405-406 [emphasis added])—
 
 *742
 
 governs this case, and decline to apply the holding of
 
 Linn v Plant Guard Workers
 
 (383 US 53 [1966]) — that a malicious libel suit is not preempted by the NLRA — to this case.
 

 We also reject, as a creative attempt " 'to evade the mandatory arbitration provisions of the [RLA]’ ” any suggestion that the preemptive effect of the RLA does not apply to suits, such as this one, brought by an employee against a coworker in an individual capacity
 
 (Henegar v Banta,
 
 817 F Supp 668, 672 [ND Ohio 1993], quoting
 
 Gray v Chessie Sys.,
 
 588 F Supp 1334, 1337 [D Md 1984];
 
 see also, Gay v Affourtit,
 
 1993 WL 438923, 3 [US Dist Ct, SD NY 1993],
 
 supra; Gonzalez v Northwest Airlines,
 
 201 NJ Super 422, 427-428, 493 A2d 547). The claimed distinction between suits brought against the carrier and those brought against an employee individually ignores the explicit language of the RLA which provides that
 
 "any disputes”
 
 (45 USC § 153 [First] [j] [emphasis added]) "concerning rates of pay, rules, or working conditions” are to be promptly settled by the established arbitration procedures (45 USC § 153 [First] [i]). It also ignores the RLA’s legislative history, which indicates that Congress "intended to protect the public from the injuries and losses consequent upon any impairment or interruption of interstate commerce through failure of
 
 managers and employees
 
 to settle peaceably their controversies” (HR Rep No. 328, 69th Cong, 1st Sess 1 [emphasis added]).
 

 Applying the aforementioned principles, we conclude that plaintiffs slander action is preempted and the trial court lacked subject matter jurisdiction to entertain it. The substance of plaintiffs claim is that defendant falsely accused her of drug use during the July 16 meeting and failed to comply with the negotiated policies and procedures governing such inquiries. At the time of the alleged slander, plaintiff was being interviewed regarding her work performance and her possible violation of the substance abuse policy. Thus, the alleged tortious conduct was "inextricably intertwined” with a work-related investigation that defendant Hirsh was authorized to undertake by the terms of the CBA
 
 (see, Magnuson,
 
 576 F2d 1367, 1369,
 
 supra).
 
 Accordingly, the defamation action is a preempted "minor dispute”
 
 (see, Lorenz,
 
 980 F2d, at 268,
 
 supra; Magnuson,
 
 576 F2d 1367,
 
 supra; cf., Rosemond v National R. R. Passenger Corp.,
 
 1986 WL 10711 [SD NY 1986],
 
 supra).
 

 The State action against defendant "in essence and sub
 
 *743
 
 stance” concerned the application or interpretation of company rules embodied in Metro-North’s CBA
 
 (see, Carson v Southern Ry. Co.,
 
 494 F Supp 1104, 1110 [D SC 1979]). Adjudication of plaintiff’s State tort claim would have been impossible without reference to conduct governed by the collective bargaining agreement since, in rendering its verdict, the jury here was required to specifically determine whether defendant’s conduct was qualifiedly privileged under the labor contract and whether he exceeded the scope of that privilege
 
 (see, Choate v Louisville & Nashville R. R. Co.,
 
 715 F2d 369, 372 [7th Cir 1983]). In finding that defendant did not have the authority under the collective bargaining agreement to engage in the exchange with plaintiff in the manner that he did, the jury had to second-guess whether defendant Hirsh conducted the investigation of plaintiff within the dictates of the labor agreement. In so doing, the jury necessarily trespassed upon the exclusive authority of the adjustment board to determine the manner in which an employer may enforce company policies.
 

 The risk to be avoided by the provisions for the board’s exclusive jurisdiction — that a State court ruling may be inconsistent with a Federal adjustment board determination on the same employment issue — is present here. Notably, plaintiff claimed at trial that defendant Hirsh knew that his statements were false — and thus were maliciously uttered — because plaintiff’s two immediate supervisors previously told defendant that plaintiff did not use drugs. However, the terms of the Metro-North substance abuse policy authorize a supervisor to proceed with an employee substance abuse investigation by relying "solely on evidence of behavior, personal observations, or other evidence customarily relied upon in investigations or hearings.” Thus, plaintiff’s theory that defendant’s reliance upon his own observations here constituted malice could well be seen as unsustainable in light of the terms of the agreement which permit such conduct.
 

 The trial record also supports defendant’s contention that plaintiff’s tort action constituted a preempted "disguised” contract claim. As additional proof of defendant’s malice, plaintiff introduced, over objection, a letter written to her by defendant some six months after the July 16 meeting notifying her that her position had been abolished. Plaintiff’s reliance upon this document at trial suggests that through the "disguised” State tort defamation action, plaintiff interjected into the litigation the claim that she was "unjustly treated”
 
 *744
 
 and. ultimately "forced out” of her position — matters entrusted to the sole jurisdiction of the adjustment board under the RLA
 
 (see, Carson v Southern Ry. Co.,
 
 494 F Supp 1104, 1112,
 
 supra).
 

 Finally, the contention that preemption of State tort claims by the RLA penalizes railway workers for being governed by a collective bargaining agreement lacks merit. The grievance-to-arbitration procedures made available to employees governed by the RLA provide a valuable benefit, albeit different from the relief that may be obtained through judicial intervention: a ready forum to promptly resolve employment-related disputes and redress grievances without any cost of litigation to the employee
 
 (see, Union Pac. R. R. Co. v Sheehan,
 
 439 US 89, 94,
 
 supra).
 
 In any event, the determinative inquiry is not whether an employee could obtain more favorable relief in State court, but whether the dispute is "minor” within the meaning of the RLA and the grievance procedure established by the RLA is intended by Congress to be the plaintiff’s exclusive remedy, as it is here
 
 (see, Magnuson, 576
 
 F2d, at 1369-1370,
 
 supra; United Airlines v Superior Ct.,
 
 234 Cal App 3d 1085, 1091, 286 Cal Rptr 159 [1991]).
 

 Accordingly, the order of the Appellate Division should be affirmed, with costs.
 

 Judges Simons, Bellacosa, Smith, Levine and Ciparick concur; Chief Judge Kaye taking no part.
 

 Order affirmed, with costs.
 

 [1]
 

 . Rule 52, entitled "Unjust Treatment,” provides: "An employee who considers himself[/herself| unjustly treated except for discipline matters shall have the * * * right of investigation, hearing on appeal and representation * * * if written request which sets forth the employee’s complaint is made to his[/her] supervising officer within thirty (30) calendar days of cause of complaint.”
 

 [2]
 

 . Although plaintiff was granted that hearing on administrative appeal, it has been postponed pending the conclusion of this action.
 

 [3]
 

 . By contrast, "major disputes” involve claims arising from the negotiation or formation of the collective bargaining agreement itself, and are not subject to the grievance-to-arbitration dispute resolution procedures
 
 (see, Burley,
 
 325 US 711, 723,
 
 supra).