**Sharon E. MACK, individually and as mother and natural guardian of David G. Mack, Jr., a minor, Plaintiff,**

v.

**METRO–NORTH COMMUTER RAILROAD, Maurice J. Kiniry and Joe Bauman, individually and as employees of Metro–North, Defendants.**

No. 94 Civ. 2024 (RPP).

United States District Court, S.D. New York.

Nov. 29, 1994.

Campbell Holder & Assoc. by Campbell Holder, New York City, for plaintiff.

Metro–North Legal Dept. by Carol S. Barnett, New York City, for defendants.

## OPINION AND ORDER

ROBERT P. PATTERSON, Jr., District Judge.

Defendants move, pursuant to Fed. R.Civ.P. 12(b)(1), to dismiss this case for lack of subject matter jurisdiction and Plaintiff moves to remand the case to state court, pursuant to 28 U.S.C. § 1447.

### Background

Plaintiff Sharon Mack initiated this action in the Supreme Court of New York County against Metro–North Commuter Railroad ("Metro–North"), and Maurice Kiniry and Joe Bauman, individually and as employees of Metro–North, alleging state law claims of defamation, assault, unlawful imprisonment and intentional infliction of mental anguish on behalf of herself and her ten-year-old son, David, Jr.

From January 1, 1983 to June 10, 1993, Plaintiff was employed as a conductor by Metro–North. Plaintiff's husband, David G. Mack, is employed by Metro–North as a ticket seller.

According to the complaint ("Complaint"), on January 17, 1994, Plaintiff and her son were passengers on the Metro–North train bound for New York's Grand Central Station on the New Haven line, riding on a "dependent pass" when Defendant Kiniry accused Ms. Mack of illegally riding on an employee pass after he had fired her. Plaintiff advised that she was not riding on an employee pass but rather on a dependent pass which she had already shown the conductor. Kiniry continued yelling accusations and transmitted over the radio system, "I have Sharon Mack. She is riding illegally," and when the train arrived at Grand Central Station, Plaintiff was taken into custody and questioned for one hour.

On March 23, 1994, Defendants removed the case to federal court, claiming federal question jurisdiction. On April 21, 1994, Defendants filed this motion to dismiss.. On May 27, 1994, Plaintiff cross-moved for remand to New York Supreme Court. The Defendants' motion argues that Plaintiff's claim is subject to arbitration under collective bargaining agreements between Metro–North and the United Transportation Union and the Transportation Communications International Union since employee and dependent passes are rights provided for by those collective bargaining agreements, and that,

therefore, Plaintiff's state law tort claims are preempted by operation of the Railway Labor Act, 45 U.S.C. § 151, *et seq.* ("RLA").

The RLA establishes a mandatory arbitral mechanism for settling "major disputes," involving rates of pay, rules or working conditions, and "minor disputes," growing out of grievances or out of interpretation or application of agreements covering rates of pay, rules or working conditions. Defendants argue that the right of Plaintiff to use the pass as well as the right of Defendants to question her use of the pass are governed by the UTU and the TCU collective bargaining agreements ("CBAs") between Metro–North and the unions, that Plaintiff's claims constitute minor disputes under the RLA, and must be arbitrated by the Railroad Adjustment Board.

Plaintiff contends that the Complaint states legitimate state law claims that are not preempted by the RLA. She cross-moves to remand the case to state court.

### Analysis

■■ In passing the RLA, Congress intended to promote stability in labor-management relations by providing a comprehensive framework for resolving labor disputes. *Atchison, Topeka, & Santa Fe R.R. Co. v. Buell,* 480 U.S. 557, 562, 107 S.Ct. 1410, 1413–14, 94 L.Ed.2d 563 (1987); 45 U.S.C. § 151a. To realize this goal, the RLA established a mandatory arbitral mechanism for "the prompt and orderly settlement" of two classes of disputes. 45 U.S.C. § 151a. The first class, those concerning "rates of pay, rules or working conditions" are deemed "major disputes". Major disputes relate to "'the formation of collective bargaining agreements or efforts to secure them.'" *Consolidated Rail Corp. v. Ry. Labor Executives' Ass'n,* 491 U.S. 299, 302, 109 S.Ct. 2477, 2480, 105 L.Ed.2d 250 (1989) ("*Conrail*"), quoting *Elgin, Joliet & Eastern Ry. Co. v. Burley,* 325 U.S. 711, 723, 65 S.Ct. 1282, 1289–90, 89 L.Ed. 1886 (1945) ("*Burley*"). Minor disputes involve "controversies over the meaning of an existing collective bargaining agreement in a particular fact situation."

*Brotherhood of R.R. Trainmen v. Chicago River & Indiana R.R. Co.,* 353 U.S. 30, 33, 77 S.Ct. 635, 637, 1 L.Ed.2d 622 (1957). Thus "major disputes seek to create contractual rights, minor disputes to enforce them." *Conrail,* 491 U.S. at 302, 109 S.Ct. at 2480, citing *Burley,* 325 U.S. at 723, 65 S.Ct. at 1289–90.

Relying on language in *Conrail* and *Burley,* Defendants argue that a dispute is a "minor dispute" if it "relates ... to the meaning or proper application of a particular provision [of a collective bargaining agreement]" or it is "founded upon some incident of the employment relation ... independent of those covered by the collective agreement, e.g., claims on account of personal injuries" *Burley,* 325 U.S. at 723, 65 S.Ct. at 1290; or if it encompasses disputes that are "arguably governed" by a CBA or are "arguably justified by the terms of the parties' collective-bargaining agreement." *Conrail,* 491 U.S. at 307, 109 S.Ct. at 2483.

■ In *Hawaiian Airlines, Inc. v. Norris,* —— U.S. ——, 114 S.Ct. 2239, 129 L.Ed.2d 203 (1994) ("*Hawaiian Airlines*"), however, the Supreme Court unanimously held that the appropriate standard to determine if an individual's state-law claim is preempted by the RLA is whether the claim involves rights and obligations that exist independent of the CBA, the same standard it used in *Lingle v. Norge Div. of Magic Chef, Inc.,* 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988), a case brought under § 301 of the Labor Management Relations Act ("LMRA"), *Hawaiian Airlines,* —— U.S. at ——––——, 114 S.Ct. at 2248–49. Under the *Lingle* standard, the LMRA preempts state law only if the state-law claim is dependent on the interpretation of a CBA, *Lingle,* 486 U.S. at 407, 108 S.Ct. at 1882.

If the claim does not involve interpretation of the collective-bargaining agreement, but rather deals with purely factual questions about an employee's conduct or an employer's conduct and motives, the claim is not preempted. *Id.; cf. Hawaiian Airlines,* —— U.S. at ——, 114 S.Ct. at 2249.[1]

---

1. "Even if dispute resolution pursuant to a collective-bargaining agreement, on the one hand,

and state law, on the other, would require addressing precisely the same set of facts, *as long*

In *Hawaiian Airlines*, a discharged airline mechanic brought an action in state court claiming retaliatory discharge in violation. of public policy and a state whistleblower act. The airline argued that resort to the CBA was necessary to determine whether respondent was, in fact, discharged. The lower state court found that since these disputes "gr[e]w out of grievances or out of the interpretation and application of agreements concerning [pay rates], rules, or working conditions," 45 U.S.C.A. § 153 First (i), these tort claims were preempted by the RLA's mandatory arbitral mechanism for minor disputes. *See Hawaiian Airlines* at ——, 114 S.Ct. at 2243. The Hawaii Supreme Court reversed holding that defendant's claims against Hawaiian Airlines were not preempted.

A unanimous Court affirmed the decision of the Hawaii Supreme Court, holding that (1) a state-law cause of action is not preempted if it involves rights and obligations that exist independent of the CBA, *id.* at ——, 114 S.Ct. at 2249; and (2) the existence of a potential CBA-based remedy does not deprive an employee of independent remedies available under state law, *id.* The Court specifically rejected defendant's argument that plaintiff's claims were preempted because resort to the CBA was necessary to determine whether Norris was discharged for insubordination.

*Hawaiian Airlines* specifically addressed *Burley*'s "incident of the employment relationship" and found it to be dicta, *Hawaiian Airlines* at ——, 114 S.Ct. at 2250, and stated, "Nonetheless, to avoid any confusion, we expressly disavow any language in *Burley* suggesting that minor disputes encompass state-law claims that exist independent of the collective bargaining agreement." *Hawaiian Airlines* also clarified the "arguably justified" standard in *Conrail*, stating "[t]his 'arguably justified' standard ... was employed only for policing the line between major and minor disputes ... obviously, this test said nothing about the threshold question whether the dispute was subject to the RLA in the

first place." *Hawaiian Airlines* at —— ——, 114 S.Ct. at 2250–51.

In *Harris v. Hirsh*, 83 N.Y.2d 734, 613 N.Y.S.2d 842, 636 N.E.2d 1375 (Ct.App.1994), a case decided eleven days before *Hawaiian Airlines*, the New York Court of Appeals, relying on the principles set forth in *Burley* and *Magnuson v. Burlington Northern, Inc.*, 576 F.2d 1367 (9th Cir.1978) held that the state trial court did not have subject matter jurisdiction over an employee's common-law defamation claim against Metro–North Commuter Railway because it constituted a "minor dispute" under the Federal Railway Labor Act, *Harris* at 845, 636 N.E.2d at 1378. *Harris* makes clear that "an employee should not be permitted to disguise or restate a genuine contract claim in terms of tort or to extract parasitic tort claims from an employment-related grievance to obtain remedies outside of those contemplated by the RLA." *Id.*

In *Harris*, a defamation claim brought by a Metro–North employee who was also a member of the Brotherhood of Railway, Airline and Steamship Clerks (BRAC), Harris was called into the office of her supervisor for review of her work performance and was accused, in the presence of plaintiff's two immediate supervisors, of taking drugs. Harris requested that the BRAC district chair institute an "unjust treatment" hearing in accordance with the collective bargaining agreement between Metro–North and BRAC to determine whether defendant's conduct during the meeting violated company policy and procedure. Thereafter, Harris commenced an action for slander in state court. Defendants asserted that the comments were made in the context of a supervisor-employee interview, were subject to a qualified privilege, and that the defamation claim was preempted by the mandatory arbitration provisions set forth in the RLA. The Court of Appeals affirmed the Appellate Division's decision that the plaintiff's complaint was indeed a "minor dispute" within the meaning of the RLA since it " '[wa]s one growing out of a grievance and 'indisputably ar[o]se[ ] out of

---

as the state-law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for § 301 preemp-

tion purposes." *Hawaiian Airlines*, —— U.S. at ——, 114 S.Ct. at 2249, quoting *Lingle*, 486 U.S. at 410, 108 S.Ct. at 1883 (emphasis added).

the employment relation between the plaintiff and ... Metro–North' ", *Harris* at 844, 636 N.E.2d at 1375 (citations omitted).

The controversy between Ms. Mack and Metro–North is clearly distinguishable from the dispute in *Harris*. Ms. Harris had been called into the office of her supervisor for an evaluation of her work performance in the course of her employment.[2] Ms. Mack was not an employee of Metro–North, nor was she a member of a collective bargaining unit which had a collective bargaining agreement with Metro–North. She was riding as a passenger on a train with her son.

■ The Court of Appeals in *Harris* points out that a state law claim may survive "if 'the alleged defamation becomes distanced from the work-place and is only "peripherally" concerned with federal labor law' ", *Harris* at 845, 636 N.E.2d at 1378, quoting *Lorenz v. CSX Transp., Inc.*, 980 F.2d 263, 267 (4th Cir.1992). Ms. Mack's charges against Metro–North employees are not "minor disputes" that require interpretation of a collective bargaining agreement. Rather, Plaintiff, a non-employee, claims that she was the subject of defamatory statements that were announced over the loud-speaker of a train filled with strangers on a trip to New York; this type of claim does not constitute even a "peripheral concern" of the RLA. *See, Lorenz v. CSX Transp., Inc.*, 980 F.2d 263, 267 (4th Cir.1992) ("As the alleged defamation becomes distanced from the work-place and is only 'peripherally' concerned with federal labor law, it is excepted from preemption."); *Cf. Rosemond v. National Railroad Passenger Corp.*, 1986 WL 10711 (S.D.N.Y.1986) ("[P]laintiff's allegations are not inseparable from any employment grievance between plaintiff and his employer. Plaintiff's claims did not arise from a discharge from employment; it is not a disciplinary proceeding or a company rule violation or theft investigation

or an employment proceeding of any kind.") Ms. Mack's claims may not be preempted by any collective bargaining agreement.

Ms. Mack's tort claims turn squarely on a question of fact: whether she had been defamed on the train, whether she was a victim of intentional infliction of emotional distress and whether she had been falsely imprisoned. These issues do not require interpretation of a CBA. Rather they are issues of fact to be decided by a jury.

To rule that Plaintiff's claims be sent to arbitration would legitimize a system which would frustrate tort victims seeking remedy in the judicial system. *See, Jackson v. Consolidated Rail Corp.*, 717 F.2d 1045, 1060 (7th Cir.1983) (Posner, J., dissenting) "[I]t would be surprising if compulsory arbitration of contract disputes was intended to wipe out the employee's common law rights other than his right to enforce the very contracts that are subject to the scheme of compulsory arbitration."; *see also, Lorenz v. CSX Transp., Inc.*, 980 F.2d 263, 269–72 (4th Cir. 1992) (Sprouse, J., dissenting). *Hawaiian Airlines* makes apparent that in defining the jurisdiction of state courts, care must be used not to infringe upon the jurisdiction of the states in settling state law claims. The Court held that the element of discharge under Hawaii law is a purely factual question and that under *Lingle* " 'purely factual questions' do not 'requir[e] a court to interpret any term of a collective bargaining agreements.' " *Hawaiian Airlines*, —— U.S. at ——, 114 S.Ct. at 2248, quoting *Lingle*.[3]

---

**2.** *Cf. Gay v. Affourtit*, 1993 WL 438923 (S.D.N.Y. 1993) at *3 ("Here ... the allegedly false statements were made at work, during work hours and about work matters, factors that militate strongly in favor of resolution of this dispute through the RLA's grievance procedures.").

**3.** In *Lingle*, an employee covered by a labor agreement was fired for filing an allegedly false worker's compensation claim. After filing a

grievance pursuant to her collective-bargaining agreement, which protected employees against discharge except for "proper" or "just" cause, she filed a complaint in state court, alleging that she had been discharged for exercising her rights under Illinois worker's compensation laws. The state court had held her state-law claim preempted because "the same analysis of the facts" was required in both the grievance proceeding and the state-court action. The Supreme Court re-

versed, holding that "purely factual questions" about an employee's conduct or an employer's conduct and motives do not "requir[e] a court to interpret any term of a collective-bargaining agreement." *Lingle*, 486 U.S. at 407, 108 S.Ct. at 1882.