[980 NYS2d 83]

Robert M. Tamburino et al., Respondents, v Madison Square Garden, LP, Appellant.

First Department, February 11, 2014

## APPEARANCES OF COUNSEL

*Kauff McGuire & Margolis LLP*, New York City (*Kenneth A. Margolis* of counsel), for appellant.

*Advocates for Justice, Chartered Attorneys*, New York City (*Arthur Z. Schwartz* and *Tracey L. Kiernan* of counsel), for respondents.

## OPINION OF THE COURT

RENWICK, J.

Plaintiffs have all worked during the last decade as food and beverage servers at Madison Square Garden. The Garden, owned by defendant MSG Holdings, LLC (MSG), formerly known as Madison Square Garden, LP, is one of the largest sports and entertainment complexes in the world. Plaintiffs bring this action, premised on Labor Law § 196-d, on behalf themselves and a class of individuals similarly situated, claiming that the Garden retained a portion of a mandatory "service charge" that should have been allocated to them as a gratuity. The Garden, however, argues, inter alia, that the gratuities claims are preempted by federal law, and, alternatively, that the claims are subject to mandatory grievance and arbitration under a collective bargaining agreement. For the reasons stated below, we reject both arguments and therefore affirm the denial of defendant's motion to dismiss the complaint.

The complaint alleges that, at sports and entertainment events, MSG charges and collects "service charges" in the amount of 20% of the total charge assessed for all food and beverages. This charge is added to the bill because, unlike ordering restaurant services, during which customers tip the server individually, the servers in the Garden are presumably not permitted to collect tips from customers attending Garden events. Plaintiffs claim that MSG led its customers and patrons to believe that the service charges were entirely gratuities for the service staff who served the food and drinks at these events. The complaint alleges that MSG did not distribute to the service staff all the service charges it collected.

Plaintiffs belong to Unite Here Local 100 (the Union), which represents members who work predominantly in the hotel, food service, laundry, warehouse and casino gambling industries.

The terms and conditions of plaintiffs' employment are governed by a collective bargaining agreement (CBA) entered into between the Union and MSG. Article 15 of the CBA sets forth detailed provisions regarding the MSG's obligation with regard to conditions under which gratuities must be distributed and the manner of distribution of gratuities to different classifications of employees. Articles 29 and 30 of the CBA contain a mandatory grievance procedure. Under that process, any "dispute, claim or complaint concerning the interpretation or application of the terms of th[e] [CBA]" may not be the subject of judicial action; rather it must be asserted through a three-step grievance procedure. Any dispute which remains unresolved after pursuing such process is subject to mandatory binding arbitration before an arbitrator.

■ As a threshold consideration, we find that plaintiffs' well-pleaded complaint states a valid claim under Labor Law § 196-d. Section 196-d states, in relevant part, that

> "[n]o employer or his agent or an officer or agent of any corporation, or any other person shall demand or accept, directly or indirectly, any part of the gratuities, received by an employee, or retain any part of a gratuity or of any charge purported to be a gratuity for an employee."

The plain language of section 196-d prohibits any retention or withholding of gratuities by the employer (*see Samiento v World Yacht Inc.*, 10 NY3d 70, 78 [2008]).* Thus, to the extent that the complaint may be understood to pursue the difference between what employees are guaranteed under the CBA and what was actually collected by MSG, this is the proper basis of a section 196-d claim.

■ MSG, however, argues that no viable Labor Law § 196-d claim is averred because the CBA constitutes a negotiated modification of section 196-d. MSG correctly suggests that rights pursuant to section 196-d may be contracted away. However, as pointed out by plaintiffs, such a contract must be clear as to the waiver of the employees' rights (*see Livadas v Bradshaw*, 512 US 107, 125 [1994]). In this case, nothing in the CBA states that the employees waive, or that MSG may keep for itself,

---

* As the Court of Appeals held in *Samiento*, under New York's Labor Law, an employer cannot withhold from its employees any portion of a mandatory service charge that is added to a customer's bill unless the employer makes it clear to the customer that it is retaining some or all of the charge (10 NY3d at 78).

gratuities exceeding the stated percentages. Since there was no clear, unmistakable waiver of plaintiffs' statutory rights to the full amount of any gratuity collected by defendant, MSG's argument that plaintiffs contracted away their statutory rights is unavailing (*Livadas*, 512 US at 125).

Alternatively, MSG argues, plaintiffs' claims for gratuities, premised under Labor Law § 196-d, are preempted by federal law, specifically section 301 of the Labor Management Relations Act (LMRA) (29 USC § 185). Section 301 of the LMRA provides that "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties" (29 USC § 185 [a]). The Supreme Court has interpreted this section to preempt state law claims "founded directly on rights created by collective-bargaining agreements" as well as "claims 'substantially dependent on an analysis of a collective-bargaining agreement' " (*Lingle v Norge Div. of Magic Chef, Inc.*, 486 US 399, 410 and n 10 [1988], quoting *Electrical Workers v Hechler*, 481 US 851, 859 n 3 [1987]). According to the Court, preemption is necessary "to ensure uniform interpretation of collective-bargaining agreements, and thus to promote the peaceable, consistent resolution of labor-management disputes" (*id.* at 404). Any claim that challenges a provision in a CBA must be brought under section 301 (*Allis-Chalmers Corp. v Lueck*, 471 US 202, 210 [1985]; *Vera v Saks & Co.*, 335 F3d 109, 116 [2d Cir 2003] ["plaintiff's challenge to the lawfulness of a term of the CBA will require substantial interpretation of the CBA"]).

■ Section 301, however, does not preempt state claims when state law confers an independent statutory right to bring a claim (*Livadas v Bradshaw*, 512 US at 123 ["(section) 301 cannot be read broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of state law"]; *see also Hawaiian Airlines, Inc. v Norris*, 512 US 246, 260 [1994] ["Clearly, § 301 does not grant the parties to a (CBA) the ability to contract for what is illegal under state law"]). " '[A]s long as the state-law claim can be resolved without interpreting the [CBA] itself, the claim is "independent" of the agreement for § 301 preemption purposes' " (*Mack v Metro-North Commuter R.R.*, 876 F Supp 490, 492 n 1 [SD NY 1994] [emphasis omitted], quoting *Norris*, 512 US at 262). Even if resolution of a state-law claim "involve[s] attention to the same factual considerations as the contractual determination . . . such paral-

lelism [does not mandate preemption]" (*Lingle*, 486 US at 408). A defendant's reliance on the CBA is not enough to "inject[ ] a federal question into an action that asserts what is plainly a state-law claim" (*Caterpillar Inc. v Williams*, 482 US 386, 399 [1987]).

The Second Circuit's holding in *Wynn v AC Rochester* (273 F3d 153 [2001]) illustrates the point. In that case, the court held the plaintiff's state-law claims of fraud and misrepresentation were not preempted by section 301. There, the plaintiff claimed that his personnel supervisor made false representations regarding the plaintiff's rights to elect benefits after a layoff. Despite the fact that the benefits at issue arose under the parties' CBA, the Second Circuit declined to hold that the claims were preempted by section 301. The court recognized that resolution of the plaintiff's case would require reference to the CBA (*Wynn*, 273 F3d at 158). Such reference, however, was not tantamount to interpretation of that agreement (*id.*). Since the plaintiff's claims turned mainly on the behavior and motivation of the employer, and not on interpretation of the meaning of the parties' labor agreement, the court held that the plaintiff's claims were not preempted by section 301 (*id.* at 158-159; *see also Hernandez v Conriv Realty Assoc.*, 116 F3d 35, 40 [2d Cir 1997] [plaintiff's claims for breach of contract and fraud held not to require interpretation of labor agreement and not preempted by section 301]).

In this case, MSG argues, plaintiffs' claims for gratuities are preempted by section 301 of the LMRA because it would be necessary to interpret the CBA to determine whether plaintiffs have a viable claim for gratuities. This argument must be rejected because, as indicated, plaintiffs' theory is not that MSG did not provide what the CBA required but that MSG withheld portions of the collected gratuities in violation of Labor Law § 196-d. At least on these facts, where the claims depend on the difference between what MSG received as gratuities and what MSG provided its employees, the claims for gratuities do not require an interpretation of the CBA. Indeed, plaintiffs may prevail on their claims regardless of whether MSG distributed the gratuities to its employees in the manner provided by the CBA.

Finally, we are not persuaded by defendant's argument that any and all disputes over plaintiffs' statutory rights for gratuities are resolvable exclusively through a mandatory grievance and arbitration process. A CBA cannot preclude a lawsuit

concerning individual statutory rights unless the arbitration clause in the agreement is "clear[ ] and unmistakable[ ]" that the parties intended to arbitrate such individual claims (*see 14 Penn Plaza LLC v Pyett*, 556 US 247, 251 [2009]; *Wright v Universal Maritime Service Corp.*, 525 US 70, 79-80 [1998]; *Alderman v 21 Club Inc.*, 733 F Supp 2d 461, 469-470 [SD NY 2010]).

> "A 'clear and unmistakable' waiver exists where one of two requirements is met: (1) if the arbitration clause contains an explicit provision whereby an employee specifically agrees to submit all causes of action arising out of his employment to arbitration; or (2) where the arbitration clause specifically references or incorporates a statute into the agreement to arbitrate disputes. Arbitration clauses that cover 'any dispute concerning the interpretation, application, or claimed violation of a specific term or provision' of the collective bargaining agreement do not contain the requisite 'clear and unmistakable' waiver because 'the degree of generality [in the arbitration provision] falls far short of a specific agreement to submit all federal claims to arbitration' " (*id*. at 469-470 [citations omitted], quoting *Rogers v New York Univ.*, 220 F3d 73, 76 [2d Cir 2000], *cert denied* 531 US 1036 [2000]).

In this case, the CBA at issue states that any "dispute, claim or complaint concerning the interpretation or application of [its] terms" shall proceed through the grievance procedures and, if the dispute is unable to be resolved, it shall "be submitted to arbitration." The provisions in the CBA do not expressly specify that all disputes, including those arising under state law, are subject to arbitration. Indeed, the clause does not even broadly require arbitration of any dispute regarding employment; it merely relates to a "dispute, claim or complaint concerning the interpretation or application of [its] terms." As such, the provisions of the CBA are too broad and general to demonstrate the requisite "clear and unmistakable" intent to submit all state statutory claims to arbitration. The fact that the Union, in the past, sought relief pursuant to the CBA for other gratuity-related alleged violations is not determinative, especially because none of those claims involved an alleged violation of Labor Law § 196-d.

Accordingly, the order of the Supreme Court, New York County (Milton A. Tingling, J.), entered August 23, 2011, which

denied defendant's motion to dismiss the complaint or, in the alternative, for summary judgment, should be affirmed, without costs.

FRIEDMAN, J.P., ACOSTA, MANZANET-DANIELS and GISCHE, JJ., concur.

Order, Supreme Court, New York County, entered August 23, 2011, affirmed, without costs.