60 F.3d 83
 149 L.R.R.M. (BNA) 2920, 130 Lab.Cas. P 57,931
 Harold M. GAY, Jr., Plaintiff-Appellant,
v.
Roy F. CARLSON; Daniel J. Affourtit; Manuel F. LaBee;
Joseph F. Gamarano; Stuart H. Archer; William Q. Glathe;
Ivan Johnston; Archie J. Lenzi; Richard L. Burke; Thomas
F. Brielmann; James E. Rogers; Dennis H. Brooks and Robert
H. Ellrich, Defendants-Appellees.
 No. 872, Docket 93-9252.
 United States Court of Appeals,
Second Circuit.
 Argued Jan. 18, 1995.
Decided July 12, 1995.
 
 Michael S. Haber (Israel Weinstock, Belle Harbor, NY, of counsel) for plaintiff-appellant.
 Richard Schoolman, Brooklyn, NY (Bradford W. Coupe, William E. Hannum III, Morgan, Lewis & Bockius, New York City, Louis P. Malone III, O'Donoghue & O'Donoghue, Washington, DC, of counsel) for defendants-appellees.
 Before: NEWMAN, Chief Judge, MINER and CABRANES, Circuit Judges.
 MINER, Circuit Judge:
 
 
 1
 Plaintiff-appellant Harold Gay, an airline pilot and captain, appeals from a judgment dismissing all the state tort claims that he asserted against defendants-appellees, an airline manager of the airline that employed him and various fellow employees of the airline. The claims revolved around certain reports of misconduct made against Gay by the defendants and an alleged conspiracy to have him fired by his employer.
 
 
 2
 On the appeal, Gay challenges three separate determinations made by the district judge: the dismissal of his claim for intentional infliction of emotional distress; the dismissal of certain claims against various defendants on statute of limitations grounds; and the dismissal of the remaining state tort claims as pre-empted by the Railway Labor Act.
 
 
 3
 For the reasons that follow, we reverse on the preemption issue and affirm in all other respects.
 
 BACKGROUND
 
 4
 On September 25, 1988, Gay was employed by Pan Am as the captain of Pan Am Flight No. 81, a Boeing 747 passenger aircraft enroute from New York to Los Angeles. During the course of the flight, First Officer Dennis Brooks temporarily vacated the co-pilot's seat and Flight Attendant Naomi Kaneda sat in his place. It was reported that Ms. Kaneda put her hands on the control yoke, but it never was clearly established that she actually manipulated the controls of the aircraft. The testimony of certain witnesses before the National Transportation Safety Board did indicate that Ms. Kaneda actually hand-flew the aircraft and that the aircraft deviated from its assigned altitude at that time.
 
 
 5
 An investigation of the incident was conducted by the Regional Chief Pilot of Pan Am, and he concluded that Gay was guilty of misconduct in the incident. The Chief Pilot found that Gay had allowed an unqualified person to manipulate the controls of the aircraft, in violation of Pan Am's Flight Operations Manual and Federal Aviation Regulations. As a consequence of these findings, Gay was discharged by Pan Am on December 31, 1988. Gay then filed a grievance over his discharge as provided in the collective bargaining agreement entered into between Pan Am and its pilots. The grievance proceeded to arbitration before the System Board of Adjustment, the body designated to conduct arbitrations under the collective bargaining agreement. The Board found that Gay was deprived of a full and fair investigation of the charges lodged against him and ordered him reinstated with full back pay and seniority rights. The Board made no finding on whether Gay allowed a flight attendant to fly the aircraft.
 
 
 6
 While his grievance was pending, Gay commenced the action giving rise to this appeal against the Pan Am Vice President for Flight Operations and twelve other Pan Am employees. According to the original complaint, these Pan Am employees conspired to fabricate the official reports submitted to the Chief Pilot in order to induce Pan Am to fire Gay. Originally filed in the New York Supreme Court, the complaint pleaded claims of libel, slander, prima facie tort, tortious interference with contractual relations, intentional infliction of emotional distress and conspiracy. The action was removed to federal court, and the district judge denied Gay's motion to remand it to state court. Thereafter, the district court dismissed a number of the claims that Gay pleaded in his original complaint, but Gay appeals only from the dismissal of his claim for intentional infliction of emotional distress. According to the district court, the conduct of the defendants in submitting official complaints regarding Gay's conduct and in discussing such conduct with others did not rise to the level necessary to sustain the claim.
 
 
 7
 Gay then filed his first amended complaint, which the district court dismissed on statute of limitations grounds as to defendants Brooks, Carlson, Ellrich, Gamarano, Johnston, Lenzi and Glathe and, with regard to the defamation claims pleaded, as to defendants Brielmann, Rogers and Labee. On appeal, Gay challenges the district court's rejection of his argument that the pertinent limitations periods should have been tolled. The court's rulings with respect to the first amended complaint included a rejection of defendants' argument that Gay's claims were pre-empted by the Railway Labor Act. In his second amended complaint, Gay named six defendants--Affourtit, Labee, Archer, Burke, Brielmann and Rogers. Against these defendants, he pleaded only claims of libel, slander, prima facie tort and conspiracy. These claims all referred to false allegations of Gay's misconduct made by the defendants to Pan Am and to the dissemination of false information derived from these allegations.
 
 
 8
 Next, the defendants moved to certify for appeal so much of the court's order relating to the first amended complaint as ruled that Gay's claims were not pre-empted by the Railway Labor Act. In the alternative, the defendants sought reconsideration of that ruling. The district court granted reconsideration, concluded that Gay's state tort claims were pre-empted by the Railway Labor Act and therefore dismissed the second amended complaint for lack of jurisdiction. The district court decided that the adjudication of Gay's claims would require interpretation of the collective bargaining agreement entered into between the pilots' union and Pan Am, a matter confided exclusively to the arbitral mechanism described in the Railway Labor Act.
 
 
 9
 With respect to the specific state tort claims pleaded by Gay in his second amended complaint, the district court stated:
 
 
 10
 [T]he rules of conduct and, therefore, the CBA [collective bargaining agreement], must be consulted to determine whether aircraft crew members and other employees enjoy a qualified privilege to report the misconduct of pilots, even if those reports turn out to be false and defamatory. Similarly, lack of excuse or justification is an element of a prima facie tort claim.... Therefore, it is relevant whether the CBA justified defendants' conduct which would otherwise constitute a prima facie tort.
 
 
 11
 Apparently, the district court concluded that the conspiracy claim failed because the tort claims underlying it were pre-empted by the Railway Labor Act.
 
 DISCUSSION
 I. Pre-emption of State-Law Tort Claims
 
 12
 The Railway Labor Act requires the establishment of arbitration panels known as "Adjustment Boards" to deal with disputes between employers and employees in the airline industry. 45 U.S.C. Sec. 181; see Atchison, Topeka & Santa Fe Ry. Co. v. Buell, 480 U.S. 557, 562, 107 S.Ct. 1410, 1414, 94 L.Ed.2d 563 (1987). These Boards are composed of members selected by the air carriers and by labor organizations representing their employees. 45 U.S.C. Secs. 153, 184-185. Their jurisdiction extends to disputes "growing out of grievances, or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions." Id. Sec. 184.
 
 
 13
 The collective bargaining agreement entered into by Pan Am and its pilots and relied upon by defendants-appellees here is an agreement of the type contemplated by the Railway Labor Act. Disputes that are spawned by grievances or by interpretations or applications of such agreements, known as "minor disputes," must be resolved exclusively under the arbitration procedures established by the Railway Labor Act. Id. Sec. 151a; see Baylis v. Marriott Corp., 843 F.2d 658, 662-63 (2d Cir.1988) ("Baylis I" ). Accordingly, any state-law claim determined to be a "minor dispute" within the meaning of the Railway Labor Act is pre-empted, and a court is without subject matter jurisdiction to entertain a claim of that sort. See Hawaiian Airlines, Inc. v. Norris, --- U.S. ----, ----, 114 S.Ct. 2239, 2244, 129 L.Ed.2d 203 (1994) ("[A] determination that [an employee's] complaints constitute a minor dispute would pre-empt his state law actions.").
 
 
 14
 Prior to Norris, a number of courts, including our own, took an expansive view of pre-emption under the Railway Labor Act. See, e.g., Baylis v. Marriott Corp., 906 F.2d 874, 877-78 (2d Cir.1990) ("Baylis II" ). In Baylis II, we determined that a state-law claim of tortious interference with contract, pleaded against Marriott, a stranger to a collective bargaining agreement between Pan Am and a union representing its commissary employees, was barred by the Railway Labor Act. Id. at 877. We noted in that case that state law required proof of the breach of the underlying contract as a condition to recovery for tortious inducement of the breach. We then reached the following conclusion:
 
 
 15
 Since plaintiffs cannot establish that Marriott tortiously induced Pan Am to breach without establishing the meaning of the collective bargaining agreement and its breach by Pan Am, their claims of tortious inducement of breach are preempted by the RLA.
 
 
 16
 Id.
 
 
 17
 Our expansive view of pre-emption in Baylis II has been called into question by the Supreme Court's decision in Norris. In the latter case, an airline mechanic asserted a state-law claim of wrongful discharge under Hawaii's Whistleblower Protection Act. The mechanic, a member of the union that had a collective bargaining agreement with Hawaiian Airlines, alleged that he was discharged in retaliation for his failure to certify an airplane that he considered unsafe. In rejecting the airline's defense of pre-emption, the Supreme Court stated "that a state-law cause of action is not pre-empted by the RLA if it involves rights and obligations that exist independent of the collective-bargaining agreement." Norris, --- U.S. at ----, 114 S.Ct. at 2247. The standard, the Court noted, was the same as that used in determining pre-emption under the Labor Management Relations Act. Id.; see Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988). Adopting the language in Lingle, the Norris Court held
 
 
 18
 that where the resolution of a state-law claim depends on an interpretation of the collective-bargaining agreement, the claim is pre-empted.... [H]owever, ... "purely factual questions" about an employee's conduct or an employer's conduct and motives do not "requir[e] a court to interpret any term of a collective-bargaining agreement."
 
 
 19
 Norris, --- U.S. at ----, 114 S.Ct. at 2248 (quoting Lingle, 486 U.S. at 405-07, 108 S.Ct. at 1881-82). The Supreme Court had little difficulty in determining that the retaliatory discharge claim under Hawaiian law implicated purely factual questions regarding the employee's discharge and the employer's motive, that interpretation of the collective bargaining agreement was not required for the adjudication of the claim, and that the state-law claim accordingly was not pre-empted by the Railway Labor Act. Also entering into the Court's calculus was the fact that state law was the only source of the right asserted by the employee not to be fired for whistleblowing. Id. at ----, 114 S.Ct. at 2246.
 
 
 20
 It seems clear to us, in light of Norris, that Gay's state-law claims of defamation, prima facie tort and conspiracy (which is dependent upon the first two) are not pre-empted by the Railway Labor Act. No interpretation of the collective bargaining agreement is required to resolve these claims. State law provides the only source of the rights asserted by Gay--the right to be free of defamation and the right to be free from the infliction of intentional harm. The only questions that need to be resolved in Gay's lawsuit are purely factual questions that center upon his conduct and upon the conduct and motives of his fellow employees, the defendants in the action.
 
 
 21
 The district court concluded that the Employee Rules of Conduct and, "therefore," the collective bargaining agreement, "must be consulted to determine whether [the defendants] enjoy a qualified privilege" in reporting pilot misconduct. Likewise, the district court concluded that the agreement is relevant in determining whether there was justification for what would otherwise be a prima facie tort. These conclusions are not entirely correct. As to qualified privilege, New York law provides for such a defense where "the good that may be accomplished by permitting an individual to make a defamatory statement without fear of liability outweighs the harm that may be done to the reputation of others." Garson v. Hendlin, 141 A.D.2d 55, 532 N.Y.S.2d 776, 780 (2d Dep't 1988) (internal quotations and ellipses omitted). For a communication to be considered privileged, "the relation of the parties should be such as to afford reasonable ground for supposing an innocent motive for giving the information, and to deprive the act of an appearance of officious intermeddling with the affairs of others." Id. (internal quotations omitted). New York courts have applied this standard on a case-by-case review of a variety of situations. The privilege has been held to attach to statements made by: a relative concerned about the welfare of family members, id.; a school superintendent regarding a student's death, Santavicca v. Yonkers, 132 A.D.2d 656, 518 N.Y.S.2d 29, 31 (2d Dep't 1987); members of a church hierarchy in regard to improprieties on the part of a church council member, Kantor v. Pavelchak, 134 A.D.2d 352, 520 N.Y.S.2d 830, 831 (2d Dep't 1987); a candidate for election in regard to an opposing candidate, Licitra v. Faraldo, 130 A.D.2d 555, 515 N.Y.S.2d 289, 289-90 (2d Dep't 1987); and professors in the course of tenure evaluation, Kaplan v. MacNamara, 116 A.D.2d 626, 497 N.Y.S.2d 710, 711-12 (2d Dep't 1986). A qualified privilege may also attach as the result of the performance of a duty imposed by statute. See Dunajewski v. Bellmore-Merrick Cent. High Sch. Dist., 138 A.D.2d 557, 526 N.Y.S.2d 139, 141 (2d Dep't 1988) (privilege arising as the result of a duty imposed by New York Education Law).
 
 
 22
 Whether or not a qualified privilege defense applies in the case at bar therefore can be determined solely according to New York law, and no interpretation of the collective bargaining agreement is necessary to make the determination. The privilege is independent of the agreement. Although the court may consult the Rules of Conduct, these rules in no way determine whether a qualified privilege exists, or whether the plaintiff should nevertheless prevail because actual malice animated the defendants' conduct. This dispute cannot be " 'conclusively resolved' " by interpreting the CBA. Indeed, it "involve[s] rights that exist independent of the CBA." Norris, --- U.S. at ----, 114 S.Ct. at 2250.
 
 
 23
 As to the defense of justification, the defendants have not demonstrated any basis for such a defense in the collective bargaining agreement. Even if they did, Norris teaches that the possibility that reference may be made to a collective bargaining agreement in connection with a justification defense (there, the failure of Norris to sign the aircraft maintenance record) does not give rise to pre-emption of state-law tort claims under the Railway Labor Act. Norris, --- U.S. at ----, 114 S.Ct. at 2251. Defendants' contention that the adjudication of Gay's defamation claim requires interpretation of the collective bargaining agreement on the issue of damages also must be rejected. Although it may be necessary to consult the agreement on the issue of back pay, "the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." Livadas v. Bradshaw, --- U.S. ----, ----, 114 S.Ct. 2068, 2078, 129 L.Ed.2d 93 (1994) (citing Lingle, 486 U.S. at 413 n. 12, 108 S.Ct. at 1885 n. 12). Looking to the agreement to assess damages simply is not the type of interpretation that Norris contemplated as a ground for pre-emption.
 
 
 24
 Defendants rely heavily on Harris v. Hirsh, 83 N.Y.2d 734, 613 N.Y.S.2d 842, 636 N.E.2d 1375 (1994). In Hirsh, an employee brought slander claims against a co-employee who had suggested, in the presence of two supervisors, that the plaintiff was "on drugs." Id. at 843, 636 N.E.2d at 1376. The New York Court of Appeals held that the claims were pre-empted by the Railway Labor Act, concluding as to the slander claim that adjudication "would have been impossible without reference to conduct governed by the collective bargaining agreement." Id. at 846, 636 N.E.2d at 1379. Hirsh, however, was decided before Norris, and it relies on standards, reasoning and cases that clearly did not survive Norris. In any event, the Supreme Court has vacated the judgment in Hirsh and directed that "the case [be] remanded to the Court of Appeals of New York for further consideration in light of Hawaiian Airlines, Inc. v. Norris, 512 U.S. ----, 114 S.Ct. 2239, 129 L.Ed.2d 203 (1994)." --- U.S. ----, 115 S.Ct. 1086, 130 L.Ed.2d 1056 (1995) (mem.). On remand, the Court of Appeals has concluded that the plaintiff's defamation action is not pre-empted by the RLA. See Harris v. Hirsh, 86 N.Y.2d 207, 630 N.Y.S.2d 701, 654 N.E.2d 975 (1995).
 
 
 25
 II. Intentional Infliction of Emotional Distress
 
 
 26
 In dismissing plaintiff's claim for intentional infliction of emotional distress, the district court determined that plaintiff's allegations simply did not measure up to the standards of sufficiency for the statement of such a claim. The district court stated:
 
 
 27
 All that plaintiff alleges that any of the defendants has done is lodge official complaints about plaintiff's conduct or discuss the basis of those complaints with others. Even taking as true all allegations in the complaint, in other words that defendants made up their account of plaintiff's actions, none of the defendants' alleged conduct rises to the level necessary to sustain a claim for intentional infliction of emotional distress.
 
 
 28
 We affirm this determination by the district court.
 
 
 29
 Under New York law, a party claiming intentional infliction of emotional distress must prove four elements: 1) conduct that goes beyond "all possible bounds of decency;" 2) intention to cause distress, or knowledge that defendant's conduct would result in emotional distress; 3) severe emotional distress; and 4) a causal link between the defendant's conduct and plaintiff's distress. See Richard L. v. Armon, 144 A.D.2d 1, 536 N.Y.S.2d 1014, 1015 (2d Dep't 1989). We have noted that New York courts have been "very strict" in applying these elements. Martin v. Citibank, N.A., 762 F.2d 212, 220 (2d Cir.1985). Gay's allegations do not meet the test. There was no allegation, and we have no basis for concluding, that the behavior alleged here "goes beyond all possible bounds of decency." The behavior alleged, even if done maliciously, simply fails to measure up to what is required to establish this claim. See Murphy v. American Home Products Corp., 58 N.Y.2d 293, 461 N.Y.S.2d 232, 236, 448 N.E.2d 86, 90 (1983).
 
 III. Statute of Limitations
 
 30
 The plaintiff appeals from the district court's dismissal, on statute of limitations grounds, of his claims against defendants Brooks, Carson, Ellrich, Gamarano, Johnston, Lenzi and Glathe and, with regard to his defamation claims, against defendants Brielman, Labee, and Rogers. Gay argues that the statute of limitations should have been tolled as against various non-resident defendants in accordance with the provisions of the New York Civil Practice Law & Rules.
 
 
 31
 Under Section 207 of the New York Civil Practice Law & Rules,
 
 
 32
 [i]f, when a cause of action accrues against a person, he is without the state, the time within which the action must be commenced shall be computed from the time he comes into or returns to the state. If, after a cause of action has accrued against a person, that person departs from the state and remains continuously absent therefrom for four months or more ... the time of his absence ... is not a part of the time within which the action must be commenced.
 
 
 33
 It seems certain that the defendants against whom the claims were dismissed as barred by the statute of limitations were regularly in New York during the period the statute of limitations was running and were not continuously absent for a period of four months and that schedules were published in advance and circulated to all Pan Am pilots regarding the times that the defendants would be in New York. Accordingly, the defendants were amenable to personal service in New York throughout the relevant period. The district court properly concluded, on the basis of the affidavits presented, that there was no basis for tolling the statute of limitations and no need for any evidentiary hearing on the issue.
 
 CONCLUSION
 
 34
 We affirm so much of the judgment of the district court as dismisses Gay's claim for intentional infliction of emotional distress. We also affirm so much of the judgment as dismisses certain claims against various defendants on statute of limitations grounds. We reverse the judgment to the extent that it dismisses as pre-empted Gay's claims for libel, slander, prima facie tort and conspiracy, and remand the case for further proceedings relative to these claims.