Lisa **FERRELL**, Appellant,

v.

**Nancy CROSS, in her individual capacity, Respondent, and Marci Henderson, in her individual capacity, Respondents.**

No. C4–95–1043.

Court of Appeals of Minnesota.

Feb. 6, 1996.

Review Granted April 1, 1996.

**112**

Steve G. Heikens, Minneapolis, for Lisa Ferrell.

Carol Peterson, Dorsey & Whitney, Minneapolis, for Nancy Cross.

Ronald H. Usem, Huffman, Usem, Saboe, Crawford & Greenberg, Minneapolis, for Marci Henderson.

Considered and decided by RANDALL, P.J., and PETERSON and AMUNDSON, JJ.

## OPINION

PETERSON, Judge.

On appeal from the district court's grant of summary judgment based on lack of subject matter jurisdiction, appellant argues that the district court erred in determining that her causes of action for defamation and intentional infliction of emotional distress are preempted by the federal Railway Labor Act. We reverse and remand.

## FACTS

Appellant Lisa Ferrell is an operations planner assistant in the Northwest Airlines (NWA) operations planning department. Respondent Nancy Cross is the senior operations planning assistant and appellant's supervisor. Respondent Marci Henderson is Ferrell's coworker as an operations planner assistant, and she is also supervised by Cross.

Appellant and respondents are members of the Transport Workers Union of America (TWU). The terms and conditions of their employment are defined in the collective bargaining agreement (CBA) between TWU and NWA and in the rules of conduct of NWA. The CBA specifically addresses work hours, vacation, overtime, filling positions, seniority, leaves of absence, grievances, hearings, and discipline.

The rules of conduct are expressly made a part of the CBA. The rules of conduct include prohibitions against abusive language, disturbing others, harassing, threatening, intimidating, spreading false or malicious rumors or interfering with other employees, and delaying, interfering with, or hindering work production.

Appellant filed a grievance with NWA in 1991 alleging incorrect scheduling of work during holidays. An investigation revealed an abuse by respondent Cross that resulted in Cross's removal from work scheduling responsibilities. Appellant filed four grievances in 1993 alleging unauthorized shift trades, the availability of Cross's position, and overtime issues. Appellant won some and lost some of these grievances.

In October 1993, appellant complained to NWA labor relations that her prior grievances had led respondents to make the workplace hostile and intimidating. NWA conducted an investigation and disciplined Henderson. Appellant took medical leave later in October 1993, after a "panic attack." In December 1993, appellant complained that the hostile work environment continued. Appellant requested a transfer because of the continued hostility and took an unpaid medical leave when the transfer was refused.

Appellant also filed a grievance with the union alleging that Cross's behavior was "unbecoming a member of the union." Appellant alleged that Cross participated or acquiesced in the following tactics, among others: taking credit for appellant's work; introducing errors into appellant's work; falsely accusing appellant of not working; blaming appellant for others' errors; and singling appellant out for disfavored treatment. The union eventually decided in favor of Cross.

Appellant sued respondents individually for tortious interference with contractual rights,[1] intentional infliction of emotional dis-

1. Appellant voluntarily waived this claim at oral argument and we will not address it here.

tress (IIED), and defamation. The complaint alleged Henderson, among other things, insulted and intimidated appellant; berated appellant when she took medical leave; sabotaged appellant's work; deliberately looked for and created errors in appellant's work; and falsified reports to management to start investigations into appellant's performance.

The complaint alleged Cross, among other things, was aware of and approved of Henderson's actions; told appellant she hated her and she would get back at appellant; humiliated appellant by disclosing facts about appellant's medical condition; spread false rumors about appellant's medical leave; coerced appellant into unpaid leave; ridiculed appellant for her medical condition; delayed appellant's medical leave request by prompting NWA to request more substantiation; collected records of appellant's errors for discipline or discharge; picked through appellant's trash to retrieve evidence of errors; scrutinized and criticized appellant's work more than others'; and interfered with appellant's ability to transfer within NWA.

Appellant also alleges that both respondents called appellant a liar, mentally unstable, a chronic complainer, and a number of other derogatory names. Appellant alleges she has suffered from migraine headaches, depression, sleeplessness, humiliation, embarrassment, pain, and suffering.

Respondents filed motions to dismiss all claims for lack of subject matter jurisdiction and to dismiss the interference with contract and defamation claims for failure to state a claim for which relief can be granted. Respondents argued that the district court lacked subject matter jurisdiction because appellant's claims are preempted by the federal Railway Labor Act (RLA).

The district court held that the claims were preempted by the RLA because the CBA would have to be interpreted to decide each claim. For the IIED claim, the district court concluded that interpretation of the CBA would be necessary to determine whether the outrageous conduct occurred in the context of the employment relationship. For the defamation claim, the district court concluded that interpretation of the CBA was

necessary to determine the scope of any privilege the statements may have had in the workplace. The district court declined to address the motion to dismiss for failure to state a claim.

## ISSUE

Did the trial court err in deciding appellant's state law tort claims are preempted by the federal Railway Labor Act?

## ANALYSIS

### *Standard of Review:*

 On appeal from a dismissal of an action for lack of subject matter jurisdiction, we conduct an independent review of the legal issues presented to the trial court. *See Desjarlait v. Desjarlait,* 379 N.W.2d 139, 141–44 (Minn.App.1985)(applying standard of review for legal conclusions to challenge to subject matter jurisdiction), *review denied* (Minn. Jan. 31, 1986). We do not defer to the trial court's determination of issues of law. *A.J. Chromy Constr. Co. v. Commercial Mechanical Servs., Inc.,* 260 N.W.2d 579, 582 (Minn.1977).

### *Preemption:*

 The federal Railway Labor Act (RLA), which covers the airline industry, sets up mandatory bargaining, mediation, and arbitration procedures to handle two types of disputes involving collective bargaining agreements (CBA). 45 U.S.C. §§ 151–163, 181–188 (1988); *see Consolidated Rail Corp. v. Railway Labor Executives' Ass'n,* 491 U.S. 299, 302–04, 109 S.Ct. 2477, 2480–81, 105 L.Ed.2d 250 (1989) (*Conrail*) (discussing RLA's application to disputes involving collective agreements). The first type is "major" disputes, which relate to "the formation of collective agreements or efforts to secure them." *Conrail,* 491 U.S. at 302, 109 S.Ct. at 2480. The second type is "minor" disputes, which involve "controversies over the meaning of an existing [CBA] in a particular fact situation." *Brotherhood of R.R. Trainmen v. Chicago River & I.R.R.,* 353 U.S. 30, 33, 77 S.Ct. 635, 637, 1 L.Ed.2d 622 (1957). "Thus, 'major disputes seek to create contractual rights, minor disputes to enforce them.'"

*Hawaiian Airlines v. Norris*, —— U.S. ——, ——, 114 S.Ct. 2239, 2244, 129 L.Ed.2d 203 (1994)(quoting *Conrail*, 491 U.S. at 302, 109 S.Ct. at 2480).

 Minor disputes grow

out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions.

*Id.* at ——, 114 S.Ct. at 2245 (quoting 45 U.S.C. § 151a(5)). The "category of minor disputes contemplated by § 151a are those that are grounded" in an existing CBA. *Id.* If a claim is classified as a minor dispute, then it is preempted and must be handled by the administrative procedures of the CBA. *Id.* at ——, 114 S.Ct. at 2244.

 The RLA's mechanism for resolving minor disputes, however, does not preempt "causes of action to enforce rights that are independent of the CBA." *Id.* at ——, 114 S.Ct. at 2246. "[S]ubstantive protections provided by state law, independent of whatever labor agreement might govern, are not pre-empted under the RLA." *Id.*

 The standard is whether " 'purely factual questions' about an employee's conduct or an employer's conduct and motives" require a court to interpret any term of the CBA. *Id.* at ——, 114 S.Ct. at 2248 (quoting *Lingle v. Norge Div. of Magic Chef*, 486 U.S. 399, 407, 108 S.Ct. 1877, 1882, 100 L.Ed.2d 410 (1988)). In other words, if the claim is brought under state law and no interpretation of, or substantive reference to, the CBA is necessary, then the claim is not preempted. State law claims will not be preempted even where the court's analysis of the facts might involve the same factual considerations as the contractual determination under the CBA. *Id.* More specifically, even if resolution of the claims involves reference to the rights and duties created by the CBA,

when the meaning of contract terms is not the subject of dispute, the bare fact that a [CBA] will be consulted in the course of state-law litigation plainly does not require the claim to be [preempted].

*Id.* at —— n. 8, 114 S.Ct. at 2248 n. 8 (quoting *Livadas v. Bradshaw*, —— U.S. ——, ——, 114 S.Ct. 2068, 2078, 129 L.Ed.2d 93 (1994)).

 The rationale behind this policy is that

pre-emption merely ensures that federal law will be the basis for interpreting [CBAs], and says nothing about the substantive rights a State may provide to workers when adjudication of those rights does not depend upon the interpretation of such agreements. In other words, even if dispute resolution pursuant to a [CBA], on the one hand, and state law, on the other, would require addressing precisely the same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is "independent" of the agreement for * * * pre-emption purposes.

*Id.* at ——, 114 S.Ct. at 2249 (quoting *Lingle*, 486 U.S. at 409–10, 108 S.Ct. at 1883 (discussing Labor Management Relations Act (LMRA) preemption)). Thus, the RLA will only preempt state law claims where the state law claims are dependent on the interpretation of the CBA. *Id.* (adopting LMRA framework for addressing preemption under the RLA).

There is little guidance regarding what constitutes "interpretation" of the CBA. *Hawaiian Airlines* involved a state law claim for wrongful discharge under a state whistleblower statute. —— U.S. at ——, 114 S.Ct. at 2242. The Supreme Court noted that state law was the "only source" of the right asserted by the employee. *Id.* at ——, 114 S.Ct. at 2246. The Court noted that

[w]holly apart from any provision of the CBA, [the employer] had a state-law obligation not to fire [the employee] in violation of public policy or in retaliation for whistleblowing. The parties' obligation under the RLA to arbitrate disputes arising out of the application or interpretation of the CBA did not relieve [the employer] of this duty.

*Id.* The Court stated that the issue was "whether the employer's actions [made] out the element of discharge under Hawaii law." *Id.* at ——, 114 S.Ct. at 2251. The Court noted that this question was a "purely factual inquiry into any retaliatory motive of the

employer" and did not involve an interpretation of the CBA. *Id.*

To determine whether appellant's state law tort claims require "interpretation" of the terms of the CBA, each element and defense of the relevant claims must be examined. *See Lingle,* 486 U.S. at 406–07, 108 S.Ct. at 1881–82 (explaining why LMRA did not preempt state retaliatory discharge claim).

*Defamation:*

In order for a statement to be considered defamatory, it must be communicated to someone other than the plaintiff, it must be false, and it must tend to harm the plaintiff's reputation and to lower her estimation in the community.

*Lee v. Metropolitan Airport Comm'n,* 428 N.W.2d 815, 819 (Minn.App.1988). Some "statements made in a business setting may not be actionable because of a qualified privilege." *Id.*

The law is that a communication, to be privileged, must be made upon a proper occasion, from a proper motive, and must be based upon reasonable or probable cause. When so made in good faith, the law does not imply malice from the communication itself, as in the ordinary case of libel. Actual malice must be proved, before there can be a recovery, and in the absence of such proof the plaintiff cannot recover.

*Id.* at 819–20 (quoting *Stuempges v. Parke, Davis & Co.,* 297 N.W.2d 252, 256–57 (Minn. 1980)). This qualified privilege does not apply where actual malice can be shown. *Brooks v. Doherty, Rumble & Butler,* 481 N.W.2d 120, 126 (Minn.App.1992), *review denied* (Minn. Apr. 29, 1992).

Respondents argue that the CBA and rules of conduct must be interpreted to determine respondents' right to make any comments and whether the qualified privilege defense applies. We disagree. The CBA does not determine whether a qualified privilege exists. Respondents' motives, whether they acted on reasonable or probable cause, and whether either respondent acted with actual malice are purely factual determinations that do not require a court to interpret the CBA.

Appellant is asserting a right independent of the CBA—the right to be free from defamation. Appellant's claim is based solely on a state common law right. Respondents' duty not to defame appellant exists independent of the CBA and the rules of conduct. *See Gay v. Carlson,* 60 F.3d 83, 88 (2d Cir. 1995) (only source of petitioner's defamation claim came from state law and only questions remaining were factually based on conduct of parties involved).

Although it is possible that the CBA may be referred to in connection with a qualified privilege, the CBA does not determine whether a qualified privilege exists. The privilege exists under common law; it is independent of the CBA. *See id.* (analyzing privilege defense and holding interpretation of CBA not necessary because defense existed under state law, not under CBA, even though CBA may be consulted).

All of the elements of defamation, including the privilege defense and any determination of malice, require a factual inquiry. We cannot conclude as a matter of law that the fact-finder will be required to interpret the CBA to make the necessary factual determinations. Thus, the RLA does not preempt appellant's defamation claim.

*Intentional Infliction of Emotional Distress:*

Four elements are necessary to sustain a claim for intentional infliction of emotional distress: 1) the conduct must be extreme and outrageous; 2) the conduct must be intentional or reckless; 3) it must cause emotional distress; and 4) the distress must be severe.

*Lee,* 428 N.W.2d at 823.

Respondents argue that all of the incidents that allegedly caused appellant's emotional distress occurred at the workplace and will require interpretation of the CBA to determine whether the acts were proper. We disagree.

Appellant has asserted a common law state right—the right to be free from the intentional infliction of emotional distress. State

law is the only source of the right appellant asserts. *See Pikop v. Burlington N.R.R.,* 390 N.W.2d 743, 752–53 (Minn.1986) (holding that employee's state law IIED claim was not preempted by RLA because IIED does not stem from differing interpretations of CBA, but from tort law), *cert. denied,* 480 U.S. 951, 107 S.Ct. 1616, 94 L.Ed.2d 800 (1987). Each element of the claim requires a "purely factual inquiry" that does not implicate the CBA, therefore, the RLA does not preempt appellant's IIED claim. *See Hirras v. National R.R. Passenger Corp.,* 44 F.3d 278, 283–84 (5th Cir.1995) (state law has definitions for outrageous conduct and interpretation of the CBA is unnecessary).

## DECISION

The district court erred in dismissing appellant's claims for defamation and IIED for lack of subject matter jurisdiction. The RLA does not preempt claims where there is no need to interpret a CBA. Appellant voluntarily waived her claim for tortious interference with contractual rights.

**Reversed and remanded.**