**Max FRAAD–WOLFF, Plaintiff,**

v.

**VASSAR COLLEGE, Defendant.**

**No. 94 Civ. 7363 (WCC).**

United States District Court,
S.D. New York.

July 12, 1996.

---

Law Offices of Leon Friedman and Sharyn Grobman, New York City (Leon Friedman, Sharyn Grobman, of counsel and John R. Williams, New Haven, Connecticut, of counsel), for plaintiff.

Anderson, Banks, Curran & Donoghue Mount Kisco, New York (James P. Drohan, Natalie Marshall, of counsel), for defendant.

## OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge:

Plaintiff Max Fraad–Wolff filed this diversity action on October 12, 1994. He alleges that defendant Vassar College violated New York state law by failing to comply with its established disciplinary procedures in investigating and adjudicating a harassment charge against him. He also asserts a claim under New York state law for intentional infliction of emotional distress. Defendant has moved, pursuant to Fed.R.Civ.P. 56(c), for summary judgment dismissing both claims. For the reasons set forth below, defendant's motion is granted.

## BACKGROUND

The following facts are undisputed, unless otherwise noted. Under the procedures set forth in defendant's student handbook, a student who believes that he or she has been the victim of harassment by another student may bring a complaint to the Chair of defendant's Harassment Committee. A screening committee selected by the Chair reviews the complaint without knowing the identities of the students involved and makes a determination of whether there is probable cause to proceed. If so, the complaint is transmitted to the College Regulations Panel. *See* Vassar Student Handbook § 2, at 68–69, attached as Exhibit B to Affidavit of Leon Friedman, dated Sept. 18, 1995. The Panel then adjudicates the charges in accordance with the procedures outlined in the student handbook and the College Regulations Panel Rules and Procedures.

Plaintiff, a citizen of Connecticut, entered Vassar College, a private college in New York, as a freshman in the fall of 1991. By the fall of 1993, plaintiff was a junior. During the night of September 17, 1993, John Reinish, another Vassar student, received two messages on his answering machine. Those messages, apparently consisting of statements made by three different callers, contained abusive language and threats of physical violence directed against Reinish because of his homosexuality. Reinish reported the incident to Pamela Neimeth, the Assistant Dean of Student Life and Chair of the Harassment Committee. With the assistance of other members of defendant's administration, Neimeth conducted an investigation by playing a tape of the messages throughout the campus and soliciting information about the incident. According to defendant, a number of students informed the investigators that they believed that plaintiff was one of the callers. Those students included two unidentified women who told Neimeth in confidence that they believed they were in the room from which plaintiff made the phone calls. Plaintiff asserts that during this period, Neimeth told several students that she believed plaintiff was involved in the incident; Neimeth contends that she spoke about plaintiff only with those students who came to her with information that he participated in making the phone calls.

On October 29, 1993, Faith Nichols, the Associate Director of Residential Life and the Chair of the College Regulations Panel, informed plaintiff in writing that he had been charged with harassment and that a formal hearing before the College Regulations Panel was scheduled for November 3, 1993, at 6 p.m. Both plaintiff and his parents met with Nichols on November 1, 1993, to discuss the hearing and the charge against plaintiff. Plaintiff and his parents requested a voiceprint analysis of the tapes. Nichols denied their request. On November 2, 1993, plaintiff met with Neimeth. Plaintiff contends that Neimeth told him that she would not be

testifying at the hearing; Neimeth disputes this.

The hearing took place as scheduled. Four witnesses testified against plaintiff, including Neimeth. Eight witnesses testified for plaintiff, and the Panel accepted written testimony from numerous other character witnesses. The hearing concluded around 1:30 a.m. On November 8, 1993, Nichols gave plaintiff a letter that informed him that the Panel's deliberations were concluded and that it had been unable to reach a conclusion with regard to the charge brought against him. According to plaintiff, Nichols informed him that the Panel had not found him guilty or innocent and that if Reinish had new evidence to present in the future, the hearing would resume. Plaintiff, however, would not be permitted to reopen the proceeding to present new evidence in his defense.

On November 11, 1993, plaintiff sent a letter to the Dean of Studies requesting permission to withdraw from Vassar immediately because his physical and mental exhaustion prevented him from continuing his studies. On November 15, 1993, defendant granted his request.

## DISCUSSION

■ Summary judgment should be granted when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law...." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). No genuine issue for trial exists unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict for that party. *See id.*, at 248–49, 106 S.Ct. at 2510–11. In order to defeat a motion for summary judgment, the nonmoving party must "go beyond the pleadings and ... designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The burden on the nonmoving party is tempered, however, by the rule that "[t]he evidence of the non-

movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513.

I. Failure to Comply With Disciplinary Procedures

Plaintiff contends that defendant's failure to follow the procedures outlined in its student handbook and in the Panel's rules in investigating and adjudicating the charge against him (1) violated a contract between plaintiff and defendant, the terms of which were set forth in the student handbook and in the Panel's rules, (2) denied plaintiff a fair and reasonable disciplinary hearing pursuant to fair and reasonable procedures in violation of New York state law and (3) demonstrated that defendant acted arbitrarily, capriciously and in bad faith in violation of New York state law. Plaintiff asserts that these are three distinct legal claims.

■ It is apparent, however, from our review of the case law that the New York Court of Appeals set forth the legal standard applicable to the facts alleged in the complaint in *Tedeschi v. Wagner College*. In that case, the Court held that when a private college or university "has adopted a rule or guideline establishing the procedure to be followed in relation to suspension or expulsion [of a student for nonacademic reasons] that procedure must be substantially observed." *Tedeschi v. Wagner Coll.*, 49 N.Y.2d 652, 427 N.Y.S.2d 760, 764, 404 N.E.2d 1302, 1306 (1980). Therefore, whatever the legal theory underlying plaintiff's claim may be, the crucial issue is whether defendant conducted the disciplinary proceedings against plaintiff substantially in accordance with its established procedures. Hence, we treat plaintiff's three "claims" as merely alternative formulations of the same cause of action.

As a threshold matter, defendant argues that this cause of action may only be asserted by students who have been suspended or expelled as a result of the disciplinary proceeding in question. Defendant points out, correctly, that virtually all of the reported cases in which a student has challenged a private university's disciplinary proceedings

were brought by students who had been suspended or expelled. *See, e.g., id.,* at 762, 404 N.E.2d at 1303–04; *Beilis v. Albany Medical Coll. of Union Univ.,* 136 A.D.2d 42, 525 N.Y.S.2d 932, 933 (1988); *Stone v. Cornell Univ.,* 126 A.D.2d 816, 510 N.Y.S.2d 313, 314 (1987). Defendant contends that because plaintiff was neither suspended nor expelled from Vassar, we should grant summary judgment dismissing his claim.

██ Plaintiff has implicitly conceded this point, as he does not specifically address defendant's argument and cites no cases that indicate that we should reach a different result.[1] Instead, plaintiff argues that he was "constructively expelled" from Vassar when the events of the investigation and hearing made it impossible for him to continue his studies there. Plaintiff cites no authority for his constructive expulsion theory and forthrightly acknowledges that we would be making new law if we recognized it. When confronted with a question of law that has not been decided by the New York courts, we must make our "best effort to predict how the state courts would decide the issue." *DeWeerth v. Baldinger,* 38 F.3d 1266, 1273 (2d Cir.), *cert. denied,* — U.S. —, 115 S.Ct. 512, 130 L.Ed.2d 419 (1994). In this instance, however, we need not decide whether to recognize plaintiff's "constructive expulsion" theory, because we see no evidence of conduct by defendant that could conceivably amount to a constructive expulsion of plaintiff.

██ While the foregoing discussion provides a sufficient basis for granting defendant's summary judgment motion on this claim, defendant argues that it is also entitled to summary judgment dismissing plaintiff's claim because the undisputed facts indicate that it substantially observed its established procedures in investigating and adjudicating the charge against plaintiff. Plaintiff responds that defendant failed to follow its established procedures by not preserving confidentiality during the

investigation, by denying his request to submit the tape of the messages that Reinish received to voiceprint analysis, by not permitting all of the character witnesses that he brought to the hearing to testify, by permitting Neimeth to testify at the hearing, by allowing her to testify that anonymous witnesses had told her that plaintiff was involved in making the phone calls and by failing to declare plaintiff innocent once the Panel did not find him guilty.

A number of plaintiff's contentions may be rejected with little discussion. First, the student handbook did not impose any obligation on defendant to do a voiceprint analysis of the tape or to permit plaintiff to have such an analysis done at his expense. Next, the Panel's rules specifically provide that the Chair of the Panel had discretion to decide how many witnesses would testify at the hearing. *See* College Regulations Panel Rules and Procedures, at ¶ 7, attached as Exhibit C to Friedman Aff. Moreover, nothing in defendant's procedures indicated that Neimeth could not testify for Reinish, provided that he submitted her name to the Panel twenty-four hours before the beginning of the hearing. *See id.,* at ¶ 3. Furthermore, defendant did not violate its established procedures by permitting Neimeth to testify about the statements made by the two women who chose to remain anonymous. Defendant's procedures do not provide for a right of confrontation, nor do they prohibit the use of evidence that might be considered hearsay in a court of law.

Plaintiff's two remaining contentions require somewhat more detailed consideration. First, plaintiff asserts that defendant failed to adhere to its policy, set forth in the student handbook, that a student accused of harassment is entitled to privacy and discretion in the investigation of the complaint. *See* Student Handbook § 2.01, at 68. In support of this contention, plaintiff has sub-

---

1. Our own research has disclosed only one New York case that was not brought by a student who had been suspended or expelled as a result of the challenged proceeding. *See Mu Chapter of Delta Kappa Epsilon v. Colgate Univ.,* 176 A.D.2d 11, 578 N.Y.S.2d 713, 714 (1992). In that case,

however, the action was brought by the alumni council of a fraternity to challenge proceedings that resulted in the suspension of the fraternity from campus. The fraternity was therefore in a position analogous to that of a student suspended as a result of disciplinary proceedings.

mitted only his own testimony that "Pamela Neimeth told several students that [he] was guilty." Affidavit of Max Fraad–Wolff, dated Sept. 2, 1995, at ¶ 12. In order to defeat defendant's motion for summary judgment, plaintiff must present evidence of specific facts from which a reasonable jury could conclude that defendant did not preserve the required confidentiality. Plaintiff's vague, unsupported statement is not sufficient to satisfy this standard.

Next, plaintiff asserts that defendant failed to follow its established procedures by not declaring him innocent once the Panel did not find him guilty. The student handbook provides that following the hearing on a harassment charge against a student, the Panel "shall render an opinion concerning the [accused student's] guilt or innocence." Student Handbook § 2.05, at 69. The Panel's finding in plaintiff's case substantially complied with this guideline. The Panel did render an opinion concerning plaintiff's guilt or innocence: it decided that "[i]n view of the available evidence, [it] was unable to reach a conclusion with regard to the charges brought against [plaintiff]...." Exhibit A, attached to Affidavit of Brian Mann, dated Aug. 3, 1995. The student handbook also states that a student shall be presumed innocent until guilt is established. *See* Student Handbook § IV(A), at 80. In accordance with this policy, defendant imposed no sanctions on plaintiff as a result of the disciplinary proceeding and placed nothing in his file that referred to the incident.[2] Contrary to plaintiff's assertion, however, nothing in the student handbook or in the Panel's rules required defendant to declare plaintiff innocent if the Panel was unable to reach a decision. In short, therefore, none of plaintiff's contentions demonstrates that a question of fact exists regarding whether defendant substantially observed its established procedures in investigating and adjudicating the charge against him.

Defendant's motion for summary judgment dismissing this claim is granted.

## II. Intentional Infliction of Emotional Distress

Plaintiff has also asserted a claim for intentional infliction of emotional distress. Under New York law, a party claiming intentional infliction of emotional distress must prove:

1) conduct that goes beyond all possible bounds of decency; 2) intention to cause distress, or knowledge that defendant's conduct would result in emotional distress; 3) severe emotional distress; and 4) a causal link between the defendant's conduct and plaintiff's distress.

*Gay v. Carlson,* 60 F.3d 83, 89 (2d Cir.1995) (internal quotation omitted). New York courts have been "very strict" in applying these elements. *See id.; Martin v. Citibank, N.A.,* 762 F.2d 212, 220 (2d Cir.1985). The court may determine, as a threshold matter, that the conduct in question is not sufficiently outrageous to satisfy the first element of this standard. *See Gay,* 60 F.3d at 89 (affirming grant of motion to dismiss); *Kalika v. Stern,* 911 F.Supp. 594, 604–05 (E.D.N.Y. 1995) (granting summary judgment dismissing claim); *Murphy v. American Home Prods. Corp.,* 58 N.Y.2d 293, 461 N.Y.S.2d 232, 236, 448 N.E.2d 86, 89–90 (1983) (affirming grant of motion to dismiss); *Fischer v. Maloney,* 43 N.Y.2d 553, 402 N.Y.S.2d 991, 993, 373 N.E.2d 1215, 1217 (1978) (reversing denial of summary judgment).

Even if we resolve all factual ambiguities and draw all justifiable inferences in plaintiff's favor, as we must in deciding a motion for summary judgment, no reasonable jury could conclude that defendant's conduct was beyond all possible bounds of decency. In his opposition to defendant's summary judgment motion, plaintiff has presented absolutely no evidence of specific facts that support his conclusory assertions that he was the target of a witch hunt by administrators at Vassar who sought to pin the blame for this incident on plaintiff regardless of his guilt or innocence. To the contrary, the

---

**2.** The only reference in plaintiff's file to the proceedings against him is a copy of the Panel's letter to him that he attached to his letter requesting permission to withdraw from Vassar. Defendant has represented that it will remove that copy from plaintiff's file upon a request from him. *See* Mann Aff., at ¶ 2.

undisputed facts in the record indicate that defendant conducted a vigorous investigation in an attempt to identify the individuals responsible and once the results of that investigation pointed to plaintiff, held a hearing to determine whether he was in fact a participant. Defendant's conduct in this respect was neither extreme nor outrageous. *See Fellheimer v. Middlebury Coll.,* 869 F.Supp. 238, 247 (D.Vt.1994) (granting summary judgment dismissing claim for intentional infliction of emotional distress brought under Vermont law, which applies same standard, by student at private college after he was found guilty by college disciplinary panel of "disrespect for persons" in connection with alleged sexual assault on another student). Accordingly, defendant is entitled to summary judgment dismissing plaintiff's claim for intentional infliction of emotional distress.

## CONCLUSION

For the foregoing reasons, we grant defendant's motion for summary judgment dismissing the complaint.

SO ORDERED.