Christopher LAWTON, Plaintiff,

v.

UNITED PARCEL SERVICE, INC.
and Al Sheahan, Defendants.

No. 04–CV–0081(RNC).

United States District Court,
D. Connecticut.

Sept. 27, 2004.

Leon M. Rosenblatt, Lynn M. Mahoney, West Hartford, CT, for Plaintiff.

Barry J. Waters, Theresa M. Parietti, Murtha Cullina LLP, New Haven, CT, for Defendants.

### RULING AND ORDER

CHATIGNY, Chief Judge.

Plaintiff Christopher Lawton brought this action in state court against his employer, United Parcel Service, Inc. ("UPS"), and division manager, Al Sheahan, seeking damages under Connecticut law for defamation and invasion of privacy by false light. Defendants removed the case pursuant to 28 U.S.C. §§ 1331 and 1441, contending that plaintiff's state law claims are completely preempted by § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a). As a UPS employee, plaintiff is a member of a collective bargaining unit represented by Local

493 of the International Brotherhood of Teamsters, and the terms and conditions of his employment are governed by a collective bargaining agreement ("CBA"). Plaintiff acknowledges that it may be necessary to refer to the CBA to resolve his claims, but denies that any provision of the CBA will have to be interpreted, and moves to remand the case on that basis. Crediting plaintiff's representations concerning his claims, I agree with his pre-emption analysis and therefore grant his motion to remand.

*Background*

Plaintiff's claims are based on statements made by the defendants accusing him of falsifying company documents in the performance of his duties. He alleges that "[t]he defendants published these statements verbally and in writing, *including a letter dated March 27, 2003 from [defendant] Sheahan,* to plaintiff's associates, coworkers, and also in an unemployment compensation proceeding." (Compl. ¶ 5.) (emphasis added). The letter in question notified plaintiff that his employment had been summarily terminated for "just cause, due to [his] dishonest act of falsifying Company documents." Sheahan sent the letter to plaintiff and Union Local 493 pursuant to Article 59 of the CBA. Article 59 provides in pertinent part that UPS may not discharge an employee without just cause; must give an employee and the union at least one warning notice prior to discharge unless the cause for discharge is "dishonesty"; and must give "proper written notice" of a discharge to both the employee and the union.

*Discussion*

If an action commenced in state court presents state law claims that are completely preempted by a federal statute, the action may be removed to federal court, even though the complaint does not plead a federal cause of action. *Caterpillar, Inc.*

*v. Williams,* 482 U.S. 386, 393, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). Whether "the pre-emptive force of a statute is so extraordinary" as to permit removal is an issue of congressional intent. *Id.*

Section 301 provides that "[s]uits for violation of contracts between an employer and a labor organization representing employees ... may be brought in any district court of the United States having jurisdiction of the parties." 29 U.S.C. § 185(a). This text "has been read to pre-empt state-court resolution of disputes turning on the rights of parties under collective-bargaining agreements." *Livadas v. Bradshaw,* 512 U.S. 107, 114–15, 114 S.Ct. 2068, 129 L.Ed.2d 93 (1994). Section 301 preemption aims to ensure that arbitration provisions in labor agreements are honored and common terms in labor agreements do not receive differing interpretations. *See id.* at 122, 114 S.Ct. 2068. It does not attempt "to regulate the substantive rights a State may provide to workers when adjudication of those rights does not depend upon the interpretation of such agreements." *Lingle v. Norge Div. Of Magic Chef, Inc.,* 486 U.S. 399, 409, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988). Thus, "it is the legal character of a claim, as independent of the rights under a collective bargaining agreement ... that decides whether a state cause of action may go forward ... [and] when the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished ...." *Livadas,* 512 U.S. at 123–24, 114 S.Ct. 2068; *see also Foy v. Pratt & Whitney Group,* 127 F.3d 229, 233 (2d Cir. 1997); *Brown v. National Football League,* 219 F.Supp.2d 372, 388 (S.D.N.Y. 2002).

■ Defendants contend that plaintiff's claims are completely preempted by § 301 because they cannot be resolved without interpreting the terms of the CBA. No other theory of § 301 preemption is presented. Plaintiff denies that his claims entail a dispute about the meaning of the CBA. In particular, he denies that the claims have anything to do with whether or not there was just cause for his discharge. Accepting his representations as true, plaintiff is not relabeling as a tort suit what is in fact an action for breach of a duty assumed in the CBA. Nor is he seeking to apply state law to determine what consequences were intended to flow from a breach of the CBA. Because neither factor is present, § 301 preemption is not required unless the state law claims entail a material dispute about the meaning of the CBA. Examination of the elements of the plaintiff's state law claims in light of the parties' preemption arguments shows that there is no such material dispute. Plaintiff's defamation claim requires proof that the disputed statements were false, that they were published, and that their publication was not privileged. *Torosyan v. Boehringer Ingelheim Pharms.*, 234 Conn. 1, 27, 662 A.2d 89 (1995). His false light invasion of privacy claim similarly requires proof that the statements were false, that they would be highly offensive to a reasonable person, and that

their falsity was known to or recklessly disregarded by the defendants. *Goodrich v. Waterbury Republican–American, Inc.*, 188 Conn. 107, 131, 448 A.2d 1317 (1982).

Defendants' preemption argument focuses primarily on the element of falsity common to both claims. The issue of falsity cannot be determined, they submit, without interpreting the term "dishonesty" in Article 59 of the CBA. According to them, this is a "term of art that has a recognized, internal meaning in the context of UPS-management relations." Defs.' Mem. in Opp. to Mot. to Remand at 15. Plaintiff responds that the term "dishonesty" must be given its usual meaning because it is not defined in the CBA. *See* Pl.'s Reply to Defs.' Mem. at 3.

■ The parties' apparent disagreement about the meaning of the term "dishonesty" does not require preemption of the claims because it is immaterial. Plaintiff does not deny that falsifying company documents, the act of which he has been accused, is an act of "dishonesty" within the meaning of Article 59 for which he could be summarily discharged.[1] Rather, he denies committing the act itself. Compl. ¶¶ 4 and 6. This issue of fact— whether plaintiff did or did not falsify company documents—can be determined without referring to the CBA. *See Lingle*, 486 U.S. at 407, 108 S.Ct. 1877.[2]

---

1. Defendants submit copies of two arbitration decisions in cases in which the union argued that falsifying company records did not constitute "dishonesty" warranting summary discharge. In each case, the argument that the employee could intentionally falsify company documents without thereby committing an act of "dishonesty" was emphatically rejected. Plaintiff does not suggest that the arbitrators' understanding of the term "dishonesty" was incorrect.

2. Defendants contend that applying state law to their statements concerning the plaintiff would be unfair because, under well-estab-

lished principles of defamation law, a false accusation of falsifying company documents constitutes libel per se. *Torosyan*, 234 Conn. at 35, 662 A.2d 89. Defendants explain that their statements concerning the plaintiff should not be regarded as per se defamatory because the word "dishonest" is a term of art. As just discussed, however, no issue is presented as to whether plaintiff's alleged act of falsifying company documents was "dishonest" within the meaning of Article 59 of the CBA; the issue is whether he falsified company documents at all. Moreover, even assuming that the term "dishonest" is a term of art (defendants do not state what they think the

Careful review of the parties' papers reveals no other dispute about the meaning of a term contained in the CBA. Defendants contend that whether their statements concerning the plaintiff were properly published or privileged cannot be determined without understanding the CBA's discharge provisions. In the same vein, they contend that understanding those provisions. would . be necessary to determine whether their statements concerning the plaintiff would be highly offensive to a reasonable person in his position and whether their conduct was reckless. But they point to no discharge provision that is the subject of a dispute.

In the absence of a material dispute about the meaning of the discharge provisions of the CBA, the need to refer to those provisions in order to evaluate defendants' conduct is insufficient to require preemption of plaintiff's state law claims. The Supreme Court has emphasized that "§ 301 cannot be read broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of state law." *Livadas*, 512 U.S. at 123, 114 S.Ct. 2068, 129 L.Ed.2d 93 (1994). Rather, state law claims are preempted by § 301 only when necessary "to assure that the purposes animating § 301 will be frustrated neither by state laws purporting to determine questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of the agreement, nor by parties' efforts to renege on their arbitration promises by relabeling as tort suits actions simply alleging breaches of duties assumed in collective-bargaining agreements." *Id.* at 122–23, 114 S.Ct. 2068 (citations omitted). Accordingly, "[w]hen resolution of the tort litigation hinges on 'purely factual questions' about the conduct or motives of

employers and employees, even if the conduct takes place during contractually authorized grievance procedures, no interpretation of the contract is required, and thus the [s]tate litigation may proceed." *Harris v. Hirsh*, 86 N.Y.2d 207, 630 N.Y.S.2d 701, 704, 654 N.E.2d 975 (1995)(applying *Lingle's* preemption standard adopted for RLA preemption in *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 263, 114 S.Ct. 2239, 129 L.Ed.2d 203 (1994)); *see also In re Bentz Metal Prods. Co.*, 253 F.3d 283, 285, 289 (7th Cir.2001) ("We now hold, consistent with *Lingle* and *Livadas v. Bradshaw*, that a state law claim is not preempted if it does not require interpretation of the CBA even if it may require reference to the CBA." (citation omitted)).

No Second Circuit case involving preemption under § 301 is directly on point, but one case involving preemption under the Railway Labor Act is analogous. In *Gay v. Carlson*, 60 F.3d 83 (2d Cir.1995), an airline pilot sued his manager and fellow employees for defamation, prima facie tort and conspiracy. The claims were based on statements the defendants made in official reports to a "chief pilot" who was investigating the plaintiff for alleged misconduct in letting an unqualified person manipulate the controls of an aircraft in flight. The district court concluded that the claims were preempted because the terms of a collective bargaining agreement covering the defendants' employment, in particular, certain "Employee Rules of Conduct," would have to be consulted to determine whether they had a qualified privilege to submit the reports and whether their conduct was justified. The Court of Appeals reversed the judgment dismissing the claims as preempted because, even if the defendants could demonstrate that

term means), I fail to see how defendants' use of the term to characterize their accusation of

falsifying company documents could make the accusation less objectionable.

the Rules of Conduct provided a basis for a defense of privilege or justification, no interpretation of the Rules was required. *Id.* at 88.

Defendants contend that *Gay* is distinguishable on the ground that their disputed statements concerning the plaintiff were made during the discharge process required by the CBA.[3] But the defendants' argument in *Gay* was not that the investigation by the "chief pilot" was required by the collective bargaining agreement; they argued that their reports to the "chief pilot" had to be evaluated in light of the duty to report misconduct imposed on them by the Rules of Conduct. The Court of Appeals allowed for the possibility that the Rules of Conduct would have to be consulted in this regard. Even assuming that to be the case, however, the applicability of the defenses of privilege and justification could be determined without interpreting the collective bargaining agreement. That being so, the claims were not preempted. *Id.* at 88–89.

Some courts have found § 301 preemption in defamation cases when the disputed statements were made during investigations or grievance proceedings undertaken pursuant to the provisions of a collective bargaining agreement. *See Shane v. Greyhound Lines, Inc.,* 868 F.2d 1057, 1063 (9th Cir.1989); *Mullins v. Int'l Union of Operating Eng'rs Local No. 77,* 214 F.Supp.2d 655, 668–69 (E.D.Va.2002), *aff'd,* 60 Fed.Appx. 510 (4th Cir.2003); *Cini v. National R.R. Passenger Corp.,* No. 99–2630, 2001 WL 1659264, at *2 (E.D.Pa. June 19, 2001). Preemption of a defamation claim may be required in such a case if the claim is so intertwined with the provisions of a collective bargaining agree-

ment as to be substantially dependent on an analysis of those provisions. But "for preemption to exist, resolution of a claim must require interpretation of a CBA, not a mere glance at it." *Bentz Metal,* 253 F.3d at 289.

Defendants find authority for a broader view of § 301 preemption in defamation cases in *Panczykowski v. Laborers Int'l Union,* Nos. 97–CV–0036A, 97–CV–0832A, 2000 WL 387602, at *3 (W.D.N.Y. March 31, 2000), *aff'd,* 2 Fed.Appx. 157 (2d Cir. 2001). In that case, however, the disputed statements had meaning only in the context of certain provisions of the union constitution, and their truth or falsity depended on how one interpreted certain terms that were defined in the union constitution. Neither factor is present in this case. Defendants' statements that plaintiff falsified company documents have meaning independent of the CBA and determining their truth or falsity requires no interpretation of any term of the CBA. Defendants argue that permitting the plaintiff to sue them under state law will contravene the purposes of § 301. The Second Circuit addressed a similar concern in *Foy.* In that case, employees covered by a collective bargaining agreement were laid off from a plant in North Haven after failing to apply for openings at a plant in Southington. The employees brought a claim of negligent misrepresentation against their employer alleging that they had not applied for the openings because they had been assured that they would be given an opportunity to transfer before being subjected to layoff. The employer argued that the claim was preempted by § 301 because the issue of justifiable reliance on the alleged misrepresentation had to be deter-

3. The opinion in *Gay* states that an arbitration board reinstated Gay based on a finding that he had been "deprived of a full and fair investigation of the charges lodged against

him ...." 60 F.3d at 86. This suggests that the investigation undertaken by the "chief pilot" might well have been contractually required.

mined in light of the employees' limited rights under the collective bargaining agreement. The Court of Appeals carefully considered whether allowing the claim to go forward would be contrary to the purposes of § 301. It concluded that preemption was not required because, although reference to the collective bargaining agreement might be needed, "state law [would] play no part in determining what the parties had agreed to in the CBA or whether the CBA ha[d] been breached." 127 F.3d at 235. Moreover, state law, not the CBA, was the source of the nonnegotiable right at issue. *Id.* Those three factors are also present here.

The Court of Appeals thought that the preemption issue presented in *Foy* was not free from doubt. At first blush, the issue in this case might seem close as well because Sheahan's letter to the plaintiff appears to have been tailored to satisfy the requirements of the discharge provisions of Article 59. But under *Lingle* and *Livadas,* that is insufficient to justify extinguishing plaintiff's claims. Preemption is required only if the parties have a material dispute about the meaning of the discharge provisions. They do not. Accordingly, preemption of plaintiff's claims is not required.

*Conclusion*

For the foregoing reasons, the motion to remand is hereby granted.

So ordered.